## CALVIN COOK and WILLIAM W. COOK *vs.* THE CHAMPLAIN TRANSPORTATION COMPANY.

A corporation existing under the laws of another state, having appeared and plead to an action in this court, cannot subsequently object to the jurisdiction of the court.

In an action on the case, by two plaintiffs for the negligent destruction of buildings and machinery alleged to be " owned and possessed" by them, where the evidence was that they were the assignees of a lease for an unexpired term for years, and one of them was in possession jointly with a third person, but it did not appear that such third person had any estate in the premises ; *held* no variance, and that the action, so far as regarded the interest of the plaintiffs, was sustained.

Where one, in the lawful use of his own property, exposes it to accidental injury from the lawful acts of others, he does not thereby lose his remedy for an injury caused by the culpable negligence of such other persons.

The owner of land on the shore of a stream or lake, or adjoining the tract of a railroad may lawfully build thereon, though the situation be one of exposure and hazard ; and he is nevertheless entitled to protection against the negligent acts of persons lawfully passing the same with vessels or carriages propelled by steam engines by which such buildings are set on fire.

In such an action, it is competent for the plaintiff to show that experienced persons in such employments were accustomed to use precautions which the defendants neglected ; the tendency of such evidence not being to establish a local law or usage.

In an action on the case for negligence, it is enough that the proof conforms substantially to the statements in the declaration; and it was therefore held that where the allegation was negligence in the conduct and management of the fires in the furnaces of a steamboat while such boat was passing near a building of the plaintiffs, it was competent to prove that the fires were unusually large when the boat left the dock, shortly before.

Engines and machinery in a mill, though firmly affixed to the building, are, when so affixed by tenant for years, for the purpose of carrying on a business of a personal nature, the personal property of such tenant.

Where a lessee for years covenanted that the buildings which he should erect, should at the expiration of the term revert to the lessor " without damages of any kind except the natural wear of the same," and a building so erected was destroyed by means of the negligent acts of a third party, held that it was waste for which the tenant was responsible to the lessor, and that the lessee or his assignee, in an action against the party guilty of the negligence, was therefore entitled to recover the whole value of such building.

ACTION on the case, tried at the Washington circuit, October 4, 1843, before WILLARD, C. Judge. The defendants were a corporation under the laws of the state of Vermont.

The first count in the declaration alleges that the plaintiffs were the owners and possessors of a certain building called a steam planing mill, with the appurtenances, fixtures and machinery thereunto belonging, and of a large quantity of lumber and timber lying in and about the same, at Whitehall, on the east side of the basin, so called, near the village of Whitehall, about eighty rods from the steamboat dock on Lake Champlain, and about thirteen feet from the waters of said basin, the mill being covered with slate except the boiler-room, which projected from the main building and was of brick covered with shingles; that the plaintiffs carried on an extensive business in the mill and derived great gains, &c.; that the defendants, to wit, on, &c. at, &c. were the owners of a steamboat called the *Washington*, running on Lake Champlain, which a little before the time when, &c. was lying at the steamboat dock, and about one o'clock of the day, was by defendants' servants, &c. who were on board navigating her, put under way from the dock on a trip for St. Johns, Canada, and passed directly opposite and near to the plaintiffs' planing-mill, remaining near said mill about ten minutes, being under a pressure of steam created by kindling and continuing the fires and heating the boilers by defendants' servants, &c. whereby the smoke and sparks arising from the fires ascended through the smoke pipes or chimneys of the boat; and that while lying near and passing opposite the plaintiffs' planing mill, the servants, &c. of the defendants " so unskilfully

Cook *v.* The Champlain Transportation Company.

managed and conducted the said fires on board the said steam-boat, &c. that a large quantity of fire, and sparks of the said fires, ascending and coming through the said smoke-pipes or chimneys of the said steamboat, &c. through the careless, negligent, improper and unskilful management, conducting and directing of the said fires on board the said steamboat, &c. by the officers, hands or servants thereof, &c. were driven and cast, blown and lodged in and upon the roof of the boiler-room of the said steam planing-mill of the said plaintiffs, by reason whereof" the roof took fire, and the mill, fixtures, lumber, &c. were consumed; by means whereof, they lost their said property and were thrown out of employment and lost the services of their hands, &c.

The other count is substantially like the first, except that instead of the averment of negligence in that count, it is stated that the servants, &c. of the defendants "did not take due and proper care of the said fires and the management thereof, and did not take due and proper care of the said smoke-pipes or chimneys of the said steamboat, &c. and the tops thereof, and did not secure the tops thereof by placing thereon a *cap or net work* which was usually placed thereon, and might and could then and there have been placed thereon to prevent, and which would have prevented the sparks from escaping from the said smoke-pipes or chimneys of said steamboat, &c. : by reason of which said negligence and omission and want of due and proper care of the said fires and of the said smoke-pipes or chimneys, of the said servants, &c. on board, &c. a large quantity of live sparks of the said fire ascending and coming through the said smoke-pipes, or chimneys of the said steamboat, &c. by and through the mere carelessness, negligence and want of due and proper care of the said servants, &c. were driven, cast, blown and lodged in and upon the roof of the said boiler-room, &c.   By reason whereof," &c. the mill, fixtures and lumber were consumed, &c.   The defendants pleaded not guilty.

The fire occurred on the 13th May, 1842, about one o'clock in the afternoon.

Norman Marble, a witness for the plaintiffs, who was their

foreman in the mill, testified as to its situation and that of the boiler-room, which were located substantially as stated in the declaration ; and that the plaintiffs were in possession of the premises in the year 1842, that there was a blacksmith's shop within 4 or 5 rods, and no other building within 20 rods. The witness first discovered the fire as it was showing itself through the gable end of the main building where the boiler-room adjoins it. It was then inconsiderable, and the witness thought he could put it out, and went for water; but when he returned the fire had dropped down among the shavings, and was beyond his control. It was a dry time, the wind was blowing hard, and there was no ladder about the premises. Just before the fire, the steamboat was passing into the lake through the basin, and she was checked but not stopped before she got opposite the mill and when within four or five rods of it; and at this time the smoke blew upon the roof of the boiler-room, and cinders and coals fell upon the dock, between the basin and the boiler-room; but when the fire in the building was discovered, the boat had passed on, and had been gone ten or fifteen minutes. At this time several canal boats were lying at a dock belonging to the plaintiffs, opposite to and a little above the mill. Two were lying abreast, and the steamboat took them in tow. Boats had been accustomed to lie there. This witness, on his cross-examination, stated that William W. Cook (one of the plaintiffs) and *Palmer Cook* were in the possession and occupancy of the mill at the time of the fire, and that he was in their employ.

A witness for the plaintiffs having stated that he saw the steamboat when she started, the plaintiffs' counsel inquired of him whether the fires in her furnaces were not unusually large. The defendants' counsel objected, on the ground that the keeping of too large fires was not alleged in the declaration. The judge overruled the objection, and the witness stated that cinders and substances on fire rose from the chimneys of the boat when she started, and at the time she passed the mill, to a greater extent than was usual.

Much testimony was given tending to show that the boat was fired up before starting, and that in passing the mill the sparks

Cook *v.* The Champlain Transportation Company.

and cinders from her smoke-pipes fell upon the roof of the boiler building and set it on fire. It appeared that in going by the mill, the boat passed as near the west or opposite side of the basin as she could, and that she was not more than half a minute in a situation which would admit of the smoke being carried on to the mill.

To prove their ownership of the property, the plaintiffs gave in evidence a lease of the ground on which the mill was erected, executed by Peter Comstock and others to Lewis Rosseau and Charles Easton, dated August 6th, 1835, for the term of eight years from the 1st November then next, at a yearly rent of $200, with the right of renewal for a further term of eight years at the option of the lessees, at a rent of $250 per annum. There was a provision in the lease restraining the lessees from using the demised premises for carrying on the storage or forwarding business, or as a steamboat landing, and from leasing the same, or any part thereof, to others for such purposes. It also contained the folowing provision : " And they [the lessees] further agree, that all buildings that may be put up or erected on the premises, shall, without damages of any kind other than the natural wear of the same, revert to and become the property of the parties of the first part, [the lessors,] whenever by the terms of this indenture they shall come into possession of the premises." The lease did not, in terms, run to the *assigns* of the lessees.

Rosseau and Easton assigned the lease to the plaintiffs on the 31st March, 1838, at the same time conveying to them two patent planing machines.

It appeared that the planing mill was erected after the execution of this lease, and in 1835 or 1836 ; and that for many years prior to that time and ever since, steamboats had been running on the lake and through this basin, passing the basin every day during the season of navigation. The defendants' boat commenced running about 1827.

The plaintiffs having rested, the defendants moved for a nonsuit, on the ground, (1) that the plaintiffs were not proved to be the owners and possessors of the mill, but that it appeared that William W. Cook and *Palmer Cook* were the possessors, and if Calvin Cook had a reversionary interest, that should have

been stated in the declaration; (2) that there was a variance between the negligence proved, if any were proved, and that alleged; (3) that the proof showed an accident and not negligence on the part of the defendants' agents; and that there was negligence on the part of the plaintiffs and their servants in locating the mill in an exposed place; in constructing it of improper materials; in suffering shavings to remain in the planing loft; in allowing canal boats to come to their dock to be towed, and in not keeping a look-out to guard against injury. The judge refused to nonsuit the plaintiffs.

The defendants then gave evidence on their part touching the questions of negligence and of damages.

It appeared that there was no practice on Lake Champlain to open the furnace doors or shut the dampers on approaching exposed places. The Washington had no dampers at the time of the fire, but some were put in afterwards. Other boats on that lake had dampers.

Testimony was given on the part of the plaintiffs that they had forbidden canal boats to lie at their dock, and that they derived no emolument from the boats so stopping, and that it was against their wishes and without their consent.

A question was made as to the rule of damages when the defendants' evidence on that subject was being given, and the judge decided that if the plaintiffs were entitled to recover, the damages should be the value of all the property destroyed, including the buildings and out-buildings.

After the evidence was closed, the defendants' counsel insisted, among other things, that the plaintiffs could not recover, because they had themselves contributed to the injury by erecting their building in an exposed place, and had not used due care in protecting it; and that the defendants were not liable in this suit for having unskilful hands, or an ill constructed boat, as those facts were not alleged in the declaration.

The judge charged that the plaintiffs could not recover on the ground that the boat was ill constructed, or that the hands on board were unskilful, these matters not being alleged in the declaration; but only for a want of due care, and for careless,

Cook *v.* The Champlain Transportation Company.

negligent, improper and unskilful management of the fires. That the defendants had a right to pass with their boat along the basin, but were bound to use ordinary care to prevent injury; and he said that, by ordinary care, he meant such as a man of common prudence and one capable of governing a family takes of his own concerns, and that the want of such care was denominated ordinary neglect; that the defendants were bound to use such care, and were responsible for such neglect. That in applying the rules of law to this case, regard must be had to the actual state of things at the time, the force and direction of the wind, the dryness of the weather, the proximity of the building to the water; and that what might be ordinary care in a still or wet day, might not be in a windy or dry one, and when near to combustible matter; that the jury were to pass upon these questions, and to determine whether the defendants' agents adopted the ordinary precautions, such as are usual in similar cases to prevent injuries. That the defendants had as good a right to place their mill where it stood, as the plaintiffs had to navigate the lake; and that the plaintiffs could not be denied redress on the ground that they had contributed to produce the injury, as they had only done what they had a right to do; and that they were not bound to keep a guard to look to their property.

He also charged that the plaintiffs had proved such a joint interest as enabled them to recover; and instructed them upon the question of damages, as before stated.

The defendants' counsel then presented a number of written propositions, the affirmative of which he requested the judge to charge; but the judge remarked that some of them were matters of evidence, others were abstract propositions not arising in the case, and the remainder had been disposed of in the charge given, which he declined to modify.

The defendants' counsel excepted to the several decisions of the judge in the course of the trial, and to each point of the charge and to the refusal to charge; and the jury found a verdict for the plaintiffs for $7485,32.

The defendants moved for a new trial on a case.

*A. C. Hand & S. Stevens*, for the defendants.  In addition to the matters insisted upon on the trial, they contended that this action would not lie against a foreign corporation.

*C. L. Allen & M. T. Reynolds*, for the plaintiffs.

*By the Court*, BEARDSLEY, J.  It was urged on the argument that the defendants, being a foreign corporation, were not amenable to the laws of this state, nor subject to the jurisdiction of its courts.

Such corporations are legal persons, and are by no means strangers in our courts.  They may sue, as is often done, and by appearing and pleading in chief, to an action brought against them, jurisdiction over the parties who defend, as in other cases, is conceded.  We need not stop to inquire whether an appearance could be compelled, for here, as far as we know, it was voluntary.  The general issue was pleaded and the cause has been tried.  As this court has an undoubted jurisdiction over the subject matter of the action, it is now quite too late to raise the question of its authority finally to dispose of the case.

When the plaintiffs had gone through with their evidence and rested, a nonsuit was asked for on various grounds, one of which was an alleged variance between the plaintiffs' right as set out in the declaration and that proved on the trial.

The declaration alleges that the plaintiffs were *owners* and *possessors* of the mill with the appurtenances, fixtures and machinery thereto belonging.  The testimony showed that they were assignees of an unexpired lease for a term of years of the mill, with a right of renewal, and absolute owners of the machinery therein ; but at the time of the fire, one of the plaintiffs (William W. Cook) and a third person (*Palmer* Cook) were in the possession and occupancy of the mill.  Upon these facts the precise objection made was, that if the plaintiffs had proved themselves to be owners of the mill, still as Calvin Cook, one of the plaintiffs, had but a reversionary interest therein, his right should have been so stated in the declaration.

I think this ground for a nonsuit was properly overruled. The plaintiffs had an unexpired lease of the mill, and for the purpose of this action were its owners. That was enough to enable them to maintain the action without proof of possession, although that was alleged in the declaration. (*Stephens' N. P.* 1023.) Nor, upon the evidence in the case, was it necessary to set up a reversionary and not a present interest in Calvin Cook. He was one of the owners of the mill; and until it appeared that some other person had a present and certain estate therein, to the exclusion of such owner, it was sufficient to set up the right of a general owner, as was done in this declaration.

Another ground for a nonsuit was urged; the injury done was said to be in part at least attributable to the negligence of the plaintiffs themselves, in voluntarily placing their property in an exposed position, and therefore the law would afford them no redress. On the argument at bar, this was strenuously insisted on as a fatal obstacle to any recovery in the case.

The general principle is certainly well established, that if the plaintiff's wrongful act or negligence concurs with that of the defendant in producing the injury, the law will not aid him in obtaining any redress. (*Rathbun* v. *Payne*, 19 *Wend.* 399; *Bradley* v. *Waterhouse*, 3 *Carr. & Payne*, 318; *Lack* v. *Seward*, 4 *id.* 106; *Plucknell* v. *Wilson*, 5 *id.* 375; *Boss* v. *Litton*, *id.* 407; *Williams* v. *Holland*, 6 *id.* 23; *Woolf* v. *Beard*, 8 *id.* 373; *Brown* v. *Maxwell*, 6 *Hill*, 592; *Vanderplank* v. *Miller*, 1 *Moo. & Malk.* 169.) This principle has a broad and extended application, but nevertheless admits of exceptions and qualifications. (*Lynch* v. *Nurdin*, 1 *Adol. & Ellis*, (*N. S.*) 29; *Bird* v. *Holbrook*, 4 *Bing.* 628; *Ilott* v. *Wilkes*, 3 *Barn. & Ald.* 308; *Smith* v. *Dobson*, 3 *Mann. & Gr.* 59; *Walters* v. *Pfeil*, 1 *Moo. & Malk.* 362.) It is unnecessary, however, to state the exceptions, for the general principle does not, as I think, reach this case. The property destroyed was in an exposed and hazardous position, and therefore in more than ordinary danger from mere accidental fires. This risk the plaintiffs assumed, but not the risk of another's negligence. They were on their own land, and free to use it in any manner and for any purpose which was law-

ful.    As was correctly observed by the circuit judge, " the plain-
tiffs had as good a right to erect their mill on the shore of the
lake as the defendants had to sail on its bosom."    It would be
a startling principle indeed, that a building placed in an ex
posed position, on one's own land, is beyond the protection of
the law; and yet it comes to this result upon the argument
urged in this case.    A landowner builds immediately on the
line of a rail-road, as he has an unquestionable right to do; it
may be an act of great imprudence, but in no sense is it illegal.
Is he remediless if his house is set on fire by the sheer negli-
gence of an engineer in conducting his engine over the rail-
way ?    There must be some wrongful act or culpable negli-
gence on the part of the plaintiff to bar him on this principle;
and neither can be affirmed of any one for simply occupying a
position of more or less exposure on his own premises.

If the principle urged on the argument is correct, it must be
applied in all cases of the same character.    The owner of a lot
builds upon it, although in close proximity to the shop of a
smith.    The house is more exposed than it would be at a great-
er distance from the shop; but is this to exempt the smith from
the obligation of care, and to screen him from the consequences
of his own negligence ?    I certainly think not.    A horse or
carriage on the open ground of the owner may be more ex-
posed to injury than they would be in a yard or a barn.    But
if damaged by the carelessness of a passer by, is the owner re-
mediless because he chose to leave them in a place of compar-
ative exposure and hazard ?    No one, I think, can doubt what
the answer to this question should be.    I refer to no authorities
on this part of the case, for in my opinion none are requisite.
It is but clearly to comprehend the principle on which this spe-
cies of defence must rest, to see that it has no application to
such a case as this.    By what criterion, let me ask, are we to
determine the hazards of a particular position, and on that
ground say that the owner by his own folly has deprived him-
self of all protection ?    In this respect every thing is compara-
tive, but where is the true standard to be found ?    A house for-
ty feet from a steamboat landing is in more hazard than one at

Cook *v.* The Champlain Transportation Company.

the distance of forty rods, but it is less exposed than one immediately on the wharf. Goods at the window of a shop are less safe than they would be on a shelf at the rear of the room; but is the owner remediless if they are carelessly soiled or broken by some one in the street? We may run through every imaginable variety of position, some of more and some of less exposure and hazard; and we must at last, I think, come to the conclusion that, while a person confines himself to a lawful employment on his own premises, his position, however injudicious and imprudent it may be, is not therefore wrongful; and that his want of due care or judgment in its selection can never amount to negligence, so as thereby to deprive him of redress for wrongs done to him by others.

There was no material variance between the manner in which the injury was done, as alleged in the declaration, and the evidence given on that point. The gravamen of the first count is, that while the boat was lying and sailing opposite and near the mill, the fires on board were so carelessly managed and conducted that the mill was thereby set on fire. This is amplified in the second count by the further allegation that proper care was not taken of the smoke-pipes, by which said negligence and want of care the mill was destroyed.

The rule in these cases is, that the proof of the injury must conform in substance to the statements in the declaration. (1 *Saund. on Pl. and Ev.* 343, 344.) This rule has not been violated. If the defendants were proved to be liable, it was for negligence in the management of the fires or smoke-pipes, and this occurred, if at all, while the boat was opposite or near to the mill. The declaration does not aver that every careless act on board the boat which tended to produce, and finally resulted in the destruction of the mill, took place while the boat was near the mill. The negligence which immediately produced the injury occurred after the boat got under way; but it was entirely competent and proper, in order to establish such negligence, to show the condition of the fires while the boat was at the wharf preparing to depart, and when she actually took her departure from that place.

The word *custom* was used in making inquiry of one or two witnesses as to the manner in which fires were managed in steamboats on the Hudson river, with a view to guard against accidents, and they were allowed to speak of their own experience and knowledge on the subject. This testimony obviously was not gone into for the purpose of proving any local law or usage on the Hudson, which was binding as such, on that river; and much less to show that such custom, if established, could bind those who might navigate Lake Champlain. But its scope and object were to show the various modes by which these fires might be checked or controlled, and which were resorted to for that purpose by persons of skill and experience; and in this point of view, the testimony seems to me unobjectionable.

The charge of the learned judge was, in my view, correct throughout, and placed the cause in all its bearings and aspects fairly before the jury. I also think the eighteen written points submitted to the judge at the close of his charge, were properly disposed of by him. (*The Camden and Amboy Co.* v. *Belknap,* 21 *Wend.* 354.) The jury were instructed that if the plaintiffs recovered at all, they were entitled to the full value of all the property destroyed, and this is the only point which remains to be particularly noticed. As to ordinary personal chattels there can be no difficulty; the value of the things destroyed is the just measure of damages. And although the engines and machinery by which the mill was moved, may have been firmly affixed to the building, yet, having been so affixed for the purpose of carrying on a business of a personal nature, they were still the personal property of the tenants, and as such removable at their will. (*Elwes* v. *Maw,* 3 *East,* 38; *Heermans* v. *Vernoy,* 6 *John.* 5.) The plaintiffs were therefore entitled to recover the full value of this description of property, if they established a right to recover for any part of it.

Then as to the mill: the building, exclusive of engines and machinery. The mill was erected by the lessees of a term for years with a right to renew for a farther term at their option. They

Cook *v.* The Champlain Transportation Company.

were to pay an annual rent, and they covenanted that all buildings which might be put up or erected on the demised premises, should, " without damages of any kind other than the natural wear of the same, revert to and become the property of the" lessors, whenever by the terms of said lease, they should come into possession of the demised premises. This lease and all the right, title and interest of the lessees therein, and in the land demised, had been assigned to the plaintiffs, with authority to do and perform any and every act or thing, which the lessees might or could have done. In terms, the land was demised to the lessees alone, no mention being made of their assigns; and the covenants on the part of the lessees were in the same form. There was no express covenant by the lessees to keep the premises in repair, nor to rebuild in any event whatever. The covenant was that all buildings which might be erected on the premises, should revert to the lessors when they might come into possession. The unexpired term and all the interest of the lessees had been assigned to the plaintiffs, and they had taken possession: but no express covenant or agreement on their part, to pay rent or do any thing else, was shown. The first term of years had not expired; and it did not appear that the lessees or the plaintiffs had indicated an intention to hold the premises for the second term, as was authorized by the lease. Upon this state of facts it was argued that the plaintiffs were bound to rebuild the mill for the benefit of the lessors, and therefore were entitled to recover its full value from the defendants; and if such was the liability of the plaintiffs, the consequence stated would seem to follow.

This liability of the plaintiffs was placed on two distinct grounds:

1. It was said the lessees were bound by their covenant to rebuild; that the covenant ran with the land and bound their assignees, and therefore the plaintiffs were liable.

2. That the destruction of the mill by tortious negligence was *waste*, for which the plaintiffs, being tenants for a term of years, were answerable to the reversioner, wholly irrespective

of any express agreement, and therefore they were entitled to a corresponding redress from the defendants.

I pass by the first ground stated, for the last seems decisive of the question. The plaintiffs claim that the mill was destroyed by the wrongful act of the defendants; and if so it was waste, for which the plaintiffs being tenants for years, were responsible. "It is common learning," said Heath, J. in *Attersoll* v. *Stevens*, (1 *Taunt*. 198,) "that every lessee of land, whether for life or years, is liable in an action of waste to his lessor, for all waste done on the land in lease, by whomsoever it may be committed." Chambre, J. in the same case, p. 196, said: " The situation of the tenant is extremely analogous to that of a common carrier; to prevent collusion, (and not on the presumption of actual collusion,) both are charged with the protection of the property entrusted to them against all but the acts of God and the king's enemies; and as the tenant in the one case is charged with the actual commission of the waste done by others, so in the other case the carrier is charged with actual default and negligence, though he loses the goods by a force that was irresistible, or by fraud, against which no ordinary degree of care and caution could have protected him." Lord Coke is not less explicit, for he says: "Tenant by the curtesy, tenant in dower, tenant for life, years, &c. shall answer for the waste done by a stranger, and shall take their remedy over." (1 *Inst*. 54, *a* ; see also 2 *id*. 145, 303; 1 *Chit. Gen. Pr.* 388; 4 *Kent's Com*. 77; 2 *R. S.* 334, § 1; 1 *Inst.* 57, *a, note* 377; 2 *Roll. Abr.* 821; 3 *Black. Com.* 228; *Comyn's Land. and Ten.* 188.)

The plaintiffs thus being bound to answer to their landlord for the full value of the building which was destroyed, were entitled to recover a like amount from the defendants.

All the legal questions appear to me to have been correctly determined, and upon the whole case, I see no reason to disturb the verdict.

New trial denied.