Smith, J.
All of the persons owning or interested in the lands proposed to be taken in these proceedings, oppose the confirmation of the commissioners report as to the compensation to be paid them. The most serious and important objections made to the report arise out of the claims made by Briggs & Webb, as lessees of a parcel of the land. It appears from the evidence taken by the commissioners, and returned and filed with their report, that Messrs. Whit-more, Rathbun and others, being the owners of certain of the lands, leased a parcel thereof to Messrs. Briggs & Webb for the term of five years, from April 1st, 1882, at the amiual rent of $500. The lease was in writing, under seal, duly executed by the lessors and lessees, and by it the parties agreed that the lessees should “have the privilege of renting said premises for the term of five years longer, after the expiration of the said first five years, upon giving to the party of the first part [the lessors] written notice of *744 their election so to do at least six months prior to the termination of this lease, at the annual rent of $600;” that in case of a sale of said premises by the lessors at the expiration of the original term of five years, the lease should be cancelled and be null and void, but the lessees should have at least six months notice of such sale prior to the expiration of such term, and in case of a bona fide offer to purchase the demised premises from the lessors, which they should elect to accept, the lessees should have the' first privilege of purchasing said premises at the price and upon the terms of such offer, and in case the lessees refused to so purchase, they should surrender the possession of the premises, and remove their buildings and property therefrom at the expiration of the original term of five years; that in case said premises should not be sold at the expiration of said original term, and the lessees should elect to take a renewal of the lease for a further term of five years, then a sale of said premises by the lessors at any time after such renewal should terminate the lease, and the lessees should surrender said premises to the lessors or their grantees within six months after written notice so to do, but that in case a bona fide offer to the lessors to purchase said premises of them, the lessees should have the first privilege to purchase the same at the price and upon the terms offered, and if they refused to make such purchase, they should surrender possession of said premises, and remove their property therefrom, as before agreed. The lease also contained a provision that the lessees should not use said premises “for any other purposes than for ice houses, harvesting ice, or uses necessary for or adapted to the business of ice dealers.”
After the commencement of these proceedings, and in the month of May, 1884, the lessees, in pursuance of the-terms of the lease, gave notice in writing to the lessors, that the lessees did “elect and determine to renew said lease and rent said premises for the term of five years longer after the expiration of the first five years mentioned in the lease, at the rent and upon the terms therein mentioned.”
Soon after the execution of the lease the lessees took possession of the demised premises, and erected thereon a large ice house, with engines, boilers, elevators, platforms, scales and other machinery and appliances for receiving, storing, weighing and delivering ice in large quantities. Evidence of experts was given tending to prove that the cost of the building, machinery and appliances was from $15,000 to upwards of $20,000, the estimates of the witnesses varying several thousand dollars. Evidence was also given that the annual rental value of the demised premises was from *745 $1,000 to $6,000, the estimates of the several witnesses differing to that extent.
The commissioners report that they have ascertained and determined the just compensation to be paid to the owners of, and persons interested in, that part of the lands taken in these proceedings, which is owned in fee by Messrs. Whitmore, Rathbun and others, to be $31,000, of which sum they award to said Whitmore, Rathbun and others, $23,975; to said Briggs & Webb for their leasehold interest under the lease aforesaid, $7,000, and to another lessee of a small part of the lands last mentioned, twenty-five dollars.
An affidavit read in opposition to the motion to confirm the report, and made by Mr. Tabor, states that since the making of the report he was informed by Mr. Nelson K. Hopkins, one of the commissioners, that said award of $7,000 to Briggs & Webb only included the value of said lease to them, and did not include the value of the builcb ings and machinery erected by them upon the demised premises; and their counsel insists that, in addition to the award to them of the value of their lease, i. e., of the unexpired term, they ought to have been awarded upwards of $20,000, which they claim to have proved to be the value of their said building and machinery. On the other hand the counsel for Messrs. Whitmore, Rathbun and others object to the award to Briggs & Webb of $7,000 for their leasehold estate, and to the deduction of that" sum from the amount fixed as the just compensation to be paid for the lands of which the said premises leased to Briggs & Webb form a part.
These proceedings are taken mider the provisions of chapter 159, of the Laws of 1884. It authorizes the city of Buffalo to take as additions to its public parks certain lands of which those affected by these proceedings are a part, and the appointment by this court of three commissioners to ascertain and report the just compensation to be paid to the person or persons owning or having any interest in the lands taken by virtue of the law. The language of the lease to Briggs & Webb, in respect to them right to remove such buildings and machinery as they might place upon the demised premises, is peculiar. The lessors do not in express terms agree that they may remove them at the end of the term or terms, or sooner; but Briggs & Webb agree that in case of a sale of the demised premises by the lessors, the lessees declining to purchase, they, the lessees, would
“ Surrender the possession of said premises, and remove their buildings and property therefrom at the termination of said term.”
*746 Anri this, and a similar provision in respect to the extended or renewed term of five years, is all the lease ■contains upon the subject of the removal or ownership of any buildings or machinery placed upon the premises by the leases.
Nevertheless, I think that, inasmuch as the lease provides that the premises shall not be used “for any other purpose than ice houses, harvesting ice, or uses necessary for or adapted to the business of ice dealers,” and as the lessees expressly agreed, as above stated, to remove their buildings and property from the premises, it was the understanding of the parties, and such is the legal effect and construction of the lease, taken as a whole, that the buildings and machinery which the lessees should, for the purposes of their trade, place upon the premises, should remain their property, and that they should have the right to remove them at the expiration of the term, and that the lessors acquired no right to or interest in such buildings or machinery. It is entirely clear from the lease itself, that when it was executed, both the parties understood and intended that the lessees would erect on the premises buildings and machinery to be used by them in carrying on their trade as ice dealers. Such being the case, the law is well settled that, whether the lease did or did not in terms so provide, the buildings and machinery would remain the personal property of the lessees, with the right on their part to remove and dispose of them at pleasure. 2 Kent Com.., 343-347; Mott v. Palmer, 1 Com. (N. Y.), 564, 570, 574; DuBois v. Kelly et al., 10 Barb., 496; Van Ness v. Packard, 2 Peters, 137-144; Holmes v. Tremper, 20 John., 29; Whiting v. Bristow, 4 Pick, 310; Rex v. Ottley, 1 Barn and Act, 161; Wansbrough v. Maton, 4 Ad. and Ellis, 884; Cook v. The Champlain Trans. Co., 1 Denio, 91; Smith et al. v. Benson et al., 1 Hill, 176.
In Mott v. Palmer, (supra) the court said (p. 572):
“ It is undoubtedly true that the soil may be owned by one man and the fences and buildings by another; and as between such owners those structures will be regarded as personal property.”
And, again, (p. 570):
“ But the earth within specified boundary lines may be owned by one man, and the buildings, trees and fences standing on it by another. * * Buildings and fixtures erected by a tenant for the purposes of trade belong to him, and are removable without the consent of the landlord.”
And again,
‘"The annexation which will convert personal into real estate is not affected by placing the chattel upon, or even by affixing it to, the land; it must bo fixed to the freehold perpeiui mus cama. Hence, if the annexation is made by virtue of a contract with the owner of the land, for the purposes of trade or agriculture, the chattel does not become a part of the freehold, but remains personal property.”
*747 In Van Ness v. Packard, above cited, the supreme court of the United 6tates decided, that a two-story house resting upon a stone foundation, and having a stone cellar and a brick chimney, erected by a tenant for the double purpose of a residence and for carrying on his trade, might be removed by him before the expiration of his term.
In Dubois v. Kelly (10 Barb., 496), the court held that a shed, stable, store-room and barn erected by a tenant, a tavern-keeper, for use in connection with a tavern leased to him, might be lawfully removed by him as his personal property, placed upon the land for the purposes of his trade, and laid down the rule of law—
“That a tenant who makes additions to the freehold, or in provements upon it, for the better use or enjoyment of the land while his interest continues, has the right to remove such additions and improvements at any time before his right of enjoyment expires, where such removal would not operate to the prejudice of the inheritance by leaving it in a worse condition than when the tenant took possession.”
And the same rule was laid down in almost the same words by the supreme court of Massachusetts, in Whiting v. Braston (supra).
In Rex v. Otley (1 Barn. & Adol., 161), the king’s bench decided that a wooden mill built upon a brick foundation, upon which it rested by its own weight, was not a part of the freehold. And the same court in Wansborough v. Maton (4 Ad. & Ellis, 884), held, that a wooden barn erected by the plaintiff, a tenant, upon leased premises, the foundation being of brick and stone let into the ground, might be removed by him as his chattel, and that he could maintain trover for it against the defendant, who refused to permit him to remove it upon the expiration of his term.
In Cook v. The Champlain Trans. Co. (1 Den., 91) it was held, that machinery and engines, though firmly affixed to the building, having been so affixed by tenants for the purposes of trade, were still the personal property of the tenants, and as such were removable at their will.
Smith et al. v. Benson et al. (1 Hill, 176) was an action of trover for a building used as a dwelling house and grocery store, which had been erected by a tenant on leased land, with a verbal understanding with his landlord that he was to have three or six months notice to remove the building. One Ladd purchased the building of the tenant, occupied it as a grocery and dwelling, and made a chattel mortgage on it to the plaintiffs. The defendants purchased the building of Ladd, subject to plaintiffs’ mortgage, and then took a lease of the land on which it stood for a term of years. The plaintiffs’ mortgage being unpaid and due, they demanded the building of the defendants, and on their refusal to surrender it, brought this action of trover there *748 for. The court held that as between the parties to the action the building was personal property, and that the plaintiff was entitled to judgment.
I have cited these decisions of varioús courts (and I might cite many more) to show how thoroughly the principle of law is established, that buildings and machinery placed by a tenant upon demised premises for the purpose of his trade do not become part of the freehold, but remain the personal property of the tenant, and are removable at will by him.
In this case the ice house and the machinery placed by Briggs & Webb upon the demised premises did not become a part of the real estate. They continued to be their personal property, and subject to their absolute control and disposition as such.
By referring to the law (chapter 159, Laws of 1884), authorizing these proceedings, it will be seen that it confers the right to take only lands for the purposes of a public park, and no other species of property. The act of determination by the common council by which these proceedings were commenced, is to take certain lands, described accurately by metes and bounds, and the commissioners whose report is under consideration were appointed “to ascertain and report the just compensation to be made to the owners and persons interested in the lands to be taken herein.”
Neither the law nor these proceedings contemplated the taking of any personal property. To the land taken the city will acquire title in fee. To the buildings and machinery placed upon the lands by Briggs & Webb, the city neither desires nor intends to obtain any title; nor can it do so, for they are, and notwithstanding these proceedings, will remain the personal property of Briggs & Webb, subject to their absolute disposition, when these proceedings have been completed. Had the commissioners awarded them a sum of money as compensation for their buildings and machinery, they could not have been compelled to accept it, as the owners of the land could be. Their right to 'have this personal property would remain unchanged and unimpaired. It seems hardly necessary to cite authority to show that in such proceedings the owners of personal property have no claim to damages, but the subject was recently considered by our supreme court in the case of The N. Y. West Shore and Buffalo R’way Co. (35 Hun, 633). The tenants of a part of the premises taken in that proceeding proved the value of their unexpired term (for which they_ were awarded $6,500), and offered to prove that in addition thereto it would cost them $2,687.70 to remove from the premises their lithographic machinery consisting of heavy presses, weighing fifteen or *749 sixteen tons each, and other bulky personal property. The commissioners rejected the offer, and the court on appeal affirmed their ruling, and held that in these cases the public right is exercised only upon the land, and that the damages awarded must be limited to the market value of the real estate taken, and all consequential damages arising out of the interruption of business, inability to perform contracts, loss of profits and good will, and the expense of removing personal property from the premises are of the same character, and are not to be estimated in assessing damages. The authorities cited in the opinion of the court amply sustain its conclusions.
The counsel for Briggs & Webb cite the decision in the Matter of N. Y. C. and H. R. R. R. Co. (35 Hun, 306), in which the court affirmed the report of commissioners, which awarded certain tenants the value of improvements made by them upon the premises.
From the report in that case it does not appear that the right of the tenants to compensation was raised or considered by the court. I have been furnished .with the brief on the part of the railroad company in that case which shows that on the appeal to the general term, which made the decision cited, the railroad company not only made no objection to the award to the tenants for the value of their improvements, but conceded it was right, wishing to avoid any reversal of the order appealed from. I have also been furnished with the manuscript opinion of Justice Lewis in that case. But he does not discuss or consider the question whether the tenants had a right to be awarded compensation for their improvements. He takes that for granted and only discusses other questions, such as whether the value of the improvements was fixed at the proper sum, etc.
I cannot, therefore, consider that case as an authority upon the question of the right of the tenant to be awarded the value of improvements, which are and always have been his personal property, and to be removed from the land taken at his pleasure.
Messrs. Whitmore and Rathbun’s counsel insist that the . commissioners erroneously awarded to their lessees the value of their term as' renewed or extended five years from the expiration of the original or first term created by the lease. But I am of opinion that this award was both legal and equitable. They had a right to the extended term upon the service of the notice that they elected to take it.
The lease gave them the right without restriction, except that the lessees should serve written notice of their election to renew the term at least six months before it expired. This notice they served in due season. The commencement of these proceedings did not impair or affect their right to *750 give the notice and thus secure the extended term of their lease. Nor was it in any degree inequitable in them to do so. They had made a large expenditure for improvements for the full enjoyment of which the extended term was. requisite, and it may fairly be assumed that thay made the improvements relying upon their unquestioned right to secure the extended term of their lease. And the award of a sum covering the value of the extended term was therefore just and right.
All the parties interested in the land make the complaint so common in similar cases, that the sums awarded them are a very inadequate compensation. And some of the testimony in these proceedings fixes much higher values upon the land, and the leasehold estates taken than the amounts awarded therefor by the commissioners. But the commissioners in cases of this character are not limited to the opinions of witnesses or their estimates of value. They are citizens of character, supposed always to be qualified, like assessors, and other such officers to form an opinion of their own as to the value of the land taken, and of the different estates into which the same may have been divided. They are required to personally view the property, and though they listen to testimony, and may ask the opinion and judgment of others, they are not bound by such evidence or opinions; and their own impartial, deliberate and honest judgment is entitled to more respect and confidence, as doing even handed justice in the premises, than any other opinion or estimate upon the subject. And their awards, ought to be, and will be accepted as conclusive, unless it be shown that they adopted some erroneous rule of valuation, or some obvious wrong or grievous mistake is evident, or there has been a misapplication or ignorance of legal rules, which has resulted in the denial or the allowance of compensation unlawfully or unjustly. A careful reading of the evidence taken by the commissioners, and filed with their report in these proceedings, convinces me that they have been governed by correct principles in making their awards, and that their conclusions are sound and are just toward all parties interested.
Exceptions were taken to some of the rulings of the commissioners upon questions of evidence given or offered before them.
While I am of opinion that no injustice resulted from any of the rulings complained of, and that the exceptions are-not well taken, it is proper to say that commissioners in cases of this kind are not bound by the rigid rules of evidence enforced in the trial of the causes in our courts, but they may properly relax thosé rules when justice and the nature of the proceeding requires.
*751 The report of the commissioners is confirmed, and an order may be entered accordingly.