The judgment of conviction should be reversed, and a new trial ordered.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK and HOGAN, JJ., concur; COLLIN and CUDDEBACK, JJ., dissent.

Judgment of conviction reversed, etc.

---

ELIZABETH M. ROGERS, Respondent, *v.* ATLANTIC, GULF AND PACIFIC COMPANY, Appellant.

Real property — life tenant may recover from a stranger for injury done by him to the life estate and the inheritance — rights of remainderman will be protected by the court.

1. An injury caused by the negligent act of a stranger is not "waste" for which the tenant is liable to a reversioner. The tenant may, however, recover from a stranger all the damages for injury done by him to the life estate and the inheritance, and such recovery will bar an action by the remainderman. The court will make proper provisions for the protection of the rights of the latter.

2. Authorities and statutes as to the liability of the tenant to the reversioner for waste collated and considered. (*Cook* v. *Champlain Transportation Co.*, 1 Den. 91; *Austin* v. *Hudson R. R. R. Co.*, 25 N. Y. 334, explained and distinguished.)

*Rogers* v. *Atlantic, Gulf & Pacific Co.*, 152 App. Div. 916, affirmed.

(Argued October 9, 1914; re-argued December 11, 1914; decided January 5, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 14, 1912, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Irving Oliver* for appellant.     The plaintiff is not entitled to recover damages to the freehold or reversion, but only damages to the life estate, for it was shown that the remaindermen are in being, and were not made parties to the action. (Code. Civ. Pro. § 1665; *Thompson* v. *M. R. R. Co.*, 130 N. Y. 360; *Van Deusen* v. *Young*, 29 N. Y. 9; *Hoolihan* v. *Hoolihan*, 119 App. Div. 925; 193 N. Y. 197; *Wood* v. *Griffin*, 46 N. H. 230; *Cal. Dry Dock Co.* v. *Armstrong*, 17 Fed. Rep. 216; *Jordan* v. *City of Benwood*, 42 W. Va. 312; *Yeager* v. *Town of Fairmount*, 43 W. Va. 259; *Johnson* v. *Chapman*, 43 W. Va. 639; *Brown* v. *Woodliff*, 89 Ga. 413; *Zimmerman* v. *Shrive*, 59 Md. 357.) A person cannot waste property of which he is not rightfully in possession, for waste implies right of possession. (*Van Deusen* v. *Young*, 29 N. Y. 9; *Hitchcock* v. *Reilly*, 44 Misc. Rep. 260; *Calkens* v. *Herger*, 44 Barb. 424; *Stuart* v. *Hawley*, 22 Barb. 619; *Clark* v. *Foot*, 8 Johns. 329.) A person seized of an estate in remainder or reversion may maintain an action founded upon an injury done to the inheritance, notwithstanding any intervening estate for life or for years. (Code Civ. Pro. § 1665; *Ives* v. *So. Buffalo Ry. Co.*, 201 N. Y. 271.) For any injury to the inheritance which arises without any fault or negligence on the part of the life tenant contributing thereto, the life tenant is in no way liable to the remaindermen. (*Ives* v. *S. B. Ry. Co.*, 201 N. Y. 293; *Beekman* v. *Van Dolsen*, 63 Hun, 487; *Sampson* v. *Grogan*, 21 R. I. 174; *United States* v. *Bostwick*, 94 U. S. 53; *Smith* v. *Kerr*, 108 N. Y. 31; *Earle* v. *Arbogast*, 180 Penn. St. 409; *Nave* v. *Berry*, 22 Ala. 282.)

*Erskine C. Rogers* for respondent. The right of the plaintiff, a life tenant, to maintain this action, and to recover damages to the freehold in behalf of the remaindermen is in accord with the rule always prevailing in England and adopted by the courts of our state. (*Attersall* v. *Stevens*, 1 Taunt. 198; *Cook* v. *Champlain Transp. Co.*, 1 Den. 91; *Baker* v. *Hart*, 123 N. Y. 437; *Austin* v. *H. R. R. R. Co.*, 25 N. Y. 334; *Dix* v. *Jacquay*, 94 App. Div. 555; *United Traction Co.* v. *Ferguson Const. Co.*, 117 App. Div. 305.) A life tenant is liable to the remaindermen for damages to the inheritance caused without fault on the part of the life tenant by a fire negligently started on adjoining premises. (*Cook* v. *Champlain Transp. Co.*, 1 Den. 91; *Austin* v. *H. R. R. R. Co.*, 25 N. Y. 334; *Baker* v. *Hart*, 123 N. Y. 470.) Damage to the inheritance at common law by means of a fire negligently set by a neighbor was, as between the life tenant and the remainderman, waste, for which the life tenant was responsible to the remainderman. (4 Kent's Comm. [5th ed.] 81; *Regan* v. *Luthy*, 16 Daly, 413; *Myers* v. *Hussenbuth*, 32 Misc. Rep. 717; *Siegel* v. *Greenberg*, 134 App. Div. 975; *Buddin* v. *Fortunato*, 16 Daly, 195; *Rimaldi* v. *Hudson Guild*, 59 Misc. Rep. 480; *Baker* v. *Hart*, 123 N. Y. 473; *Attersoll* v. *Stevens*, 1 Taunt. 198; *Cook* v. *Champlain Transp. Co.*, 1 Den. 91; *Austin* v. *H. R. R. R. Co.*, 25 N. Y. 334; *Fay* v. *Brewer*, 3 Pick. 205.) Irrespective of the question whether the life tenant is liable to the remainderman the judgment here should be affirmed, because there are other good and sufficient reasons why the plaintiff should be allowed to recover the full damages. A person may recover in an action damages belonging to another person without himself being liable for such damages. It is not necessary for this court to hold that the plaintiff is liable to the remaindermen, in the case at bar, in order to hold that the plaintiff may recover the remaindermen's damages. (Sutherland on Damages [6th ed.], 918; 5 Cyc. of

Law & Proc. 21; *Woodman* v. *Nottingham*, 49 N. H. 387; *Madison Square Bank* v. *Pierce*, 137 N. Y. 444.) The life tenant is trustee for the remainderman, and on account of such fiduciary relation should be allowed to recover the remainderman's damages inflicted by a stranger. (*Leggett* v. *Stevens*, 185 N. Y. 70; *Montfort* v. *Montfort*, 24 Hun, 120; *Baker* v. *Hart*, 123 N. Y. 470.) A life tenant is entitled to the possession of any fund which takes the place of the lands. (*Hughes* v. *Hughes*, 63 How. Pr. 408; *Smith* v. *Van Nostrand*, 64 N. Y. 278; *Luce* v. *Burchard*, 78 Hun, 537.) In the case at bar the plaintiff will hold the moneys recovered in trust for the remaindermen, and have the use thereof during her life. If the remaindermen want protection, the court would be authorized to require of the life tenant security. (*Livingston* v. *Murray*, 68 N. Y. 485; *Scott* v. *Scott*, 6 Misc. Rep. 174; *Tyson* v. *Blake*, 22 N. Y. 558; *Kidd* v. *Dennison*, 6 Barb. 9; *Jackson* v. *Brownson*, 7 Johns. 227; *Harder* v. *Harder*, 26 Barb. 409; *McGregor* v. *Brown*, 10 N. Y. 114.)

Miller, J.   The plaintiff, a life tenant, has recovered a judgment for all of the damages, both to the life estate and to the inheritance, caused by a fire set by the defendant, a canal contractor, on adjoining lands of the state, and negligently allowed to spread to the lands of the plaintiff. The single question involved in this appeal is whether the recovery should have been limited to the damages to the life estate. The right of the plaintiff to recover all of the damages has thus far been maintained on the ground that she is liable to the remaindermen for any injury to the inheritance not caused by them, the act of God or the public enemy. No case is known in which a tenant has been subjected to such a rule of liability, and the proposition is so startling as to demand examination before it is made the ground of a decision by us.

The text writers, generally, state the rule broadly that

the tenant is liable to the reversioner for all injuries amounting to waste, by whomsoever committed, even by a stranger, the only exceptions noted being injuries caused by the act of God, the public enemy, or the reversioner himself, and the obligation of the tenant is frequently likened to that of a common carrier. (See 4 Kent, *77.) But Chancellor Kent says: "Perhaps the universal silence in our courts upon the subject of any such responsibility of the tenant for accidental fires, is presumptive evidence that the doctrine of permissive waste has never been introduced, and carried to that extent, in the common law jurisprudence of the United States" (4 Kent, *82), and the text writers, generally, concur in the doctrine that the tenant is not liable for accidental fires. (1 Washburn on Real Property, 116; 1 Cruise's Digest [Greenleaf edition], 139 and note; Taylor's Landlord and Tenant, section 196.) Obviously the word "waste" in the broad, general statements above referred to is used in the legal, not in the popular, sense.

This is an action for negligence against a stranger both to the life estate and the remainder, and it may well be doubted whether the doctrine of waste has any application at all to it. Waste is thus defined by Bouvier: "Spoil or destruction, done or permitted, to lands, houses, or other corporeal hereditaments, by the tenant thereof to the prejudice of the heir or of him in reversion or remainder. * * * *Permissive waste* consists in the mere neglect or omission to do what will prevent injury; as, to suffer a house to go to decay for the want of repair. And it may be incurred in respect to the soil, as well as to the buildings, trees, fences, or live stock on the premises. *Voluntary waste* consists in the commission of some destructive act: as, in pulling down a house or ploughing up a flower-garden." "There are two kinds of waste, viz., *voluntary* or *actual*, and *negligent* or *permissive*. *Voluntary* waste may be done by pulling down or prostrating houses, or cutting down timber trees; *negligent*

waste may be suffering houses to be uncovered, whereby the spars or rafters, planches or other timber of the house are rotten." (Bacon's Abridgment, vol. 10, page 422.) In the popular sense, any injury may be waste, but it is not waste in the legal sense, unless caused in such manner as to be within the legal definition of either commissive or permissive waste.

The rule contended for is based on Lord Coke's interpretation of two English statutes passed in the 13th century, the statute of Marlbridge, 52 Henry III, chapter 24, and the statute of Gloucester, 6 Edward I, chapter 5. The former provided "that fermors, during their terms shall not make waste, sale, nor exile of house, woods and men, nor of anything belonging to the tenements that they have to farm, without special license had by writing of covenant, making mention, that they may do it, which thing if they do, and thereof be convict, they shall yield full damage, and shall be punished by amerciament grievously." The latter provided: "That a man from henceforth shall have a writ of waste in chancery against him that holdeth by law of England, or otherwise for a term of life, or for a term of years, or a woman in dower; and he, which shall be attainted of waste, shall lose the thing that he hath wasted, and moreover shall recompense thrice so much as the waste shall be taxed at." Lord Coke construed those statutes as applying to permissive waste. (2 Inst. 145, 303.) But the English cases at least raise a doubt on the point, and there seems to be a distinction between tenancies for years and for life. (See *Jones* v. *Hill*, 7 Taunt. 393; *Harnett* v. *Maitland*, 16 Mees. & W. 257; *Yellowly* v. *Gower*, 11 Exch. 274; *Powys* v. *Blagrave*, 4 De Gex, M. & G. 448; *Woodhouse* v. *Walker*, L. R [5 Q. B. D.] 404; *Davies* v. *Davies*, L. R. [38 Ch. Div.] 499; *Matter of Cartwright*, *Avis* v. *Newman*, L. R. [41 Ch. Div.] 532.) In the last case KAY, J., said: "Lord Coke's words only include permissive waste where there is an obligation to repair." He further

said: "Since the statutes of Marlbridge and, of Gloucester there must have been hundreds of thousands of tenants for life who have died leaving their estates in a condition of great dilapidation. Not once, so far as legal records go, have damages been recovered against the estate of a tenant for life on that ground. To ask me in that state of the authorities to hold that a tenant for life is liable for permissive waste to a remainderman is to my mind a proposition altogether startling." Bacon's Abridgment contains several pages of examples of actionable waste. (See volume 10, pages 422 to 434; also see Viner's Abridgment, volume 22, pages 435 et seq.) Neither there, nor anywhere in the books, have I been able to find a case of waste instanced, in which the injury was caused by the negligent act of a stranger to the estate, though it has been assumed in some cases that such an injury would amount to waste. Lord Coke gives two reasons for allowing the reversioner to recover of the tenant for waste committed by a stranger: 1. "For it is presumed in law that the former may withstand it" (2 Inst. 145, 146), and 2, "For he in the reversion cannot have any remedy but against the tenant." (2 Inst. 303.) It may be open to some question whether by "stranger" he did not mean the assignee of the tenant, against whom he said that the heir could not maintain an action for waste. (2 Inst. 300.) But, at any rate, it is plain that under that head he referred to voluntary, not permissive, waste. The Court of Chancery did not interfere to prohibit permissive waste. In *Lord Castlemain* v. *Lord Craven*, the master of the rolls said: "But as to repairs, the court never interposes in case of permissive waste, either to prohibit or give satisfaction, as it does in case of wilful waste." (22 Vin. Abr. 523.) Certainly there is no basis for any presumption that the tenant could have prevented such an injury as was done in this case. One of the reasons given for likening the liability of a tenant to that of a common carrier is that it is imposed to prevent collusion. (*Atter-*

*soll* v. *Stevens,* 1 Taunt. 183, 198.) That reason cannot apply with any force except to cases of voluntary waste. Lord Coke does except the case of injuries done by the enemies of the king, and by tempest, lightning, and the like, but in that connection he also instances a case in which it was adjudged "that if thieves burn the house of tenant for life, without evill keeping of lessees for lives fire, the lessees shall not be punished therefor in an action of waste." (2 Inst. 303.) In Halsbury's Laws of England (Vol. 18, p. 499) it is said: "Lessees for years, or from year to year, or for any other period, are liable for voluntary waste, whether committed by themselves or any other person, for, if committed by another, it is their duty, and they are presumed to be able, to withstand it." The case in 1 Taunton (*supra*) is the one generally cited as the leading case in support of the proposition that the tenant is liable for waste committed by a stranger, but that was a case of voluntary waste, the removal of clay.

Even assuming that by the rule of the ancient common law an injury caused by the negligent act of a stranger both to the estate for life or years and to the reversion or remainder amounted to waste, for which the tenant for life or years was responsible, the reasons for the rule given by Lord Coke either no longer exist or do not apply to the facts of this case. The ancient common-law forms of action have been abolished and the impediment of the common law against the maintenance of an action for waste by reversioner or remaindermen in case there was an intervening estate (2 Inst. 301; Coke upon Littleton, vol. III, p. *243) was removed in this state by chapter 246, section 47 of the Laws of 1811, which provided: "That it shall and may be lawful for any person or persons seized of an estate in remainder or reversion, to maintain an action of waste or trespass for any injury done to the inheritance, notwithstanding any intervening estate for life or for years." It may be of interest to note

that for some reason that provision was apparently concealed in the Supply Bill. It was substantially re-enacted by 1 R. S. 749, section 8, and is now section 1665 of the Code of Civil Procedure. It is still undoubtedly true that contingent remaindermen, possibly persons not in being, may not maintain the action, but that is because their estate is contingent, and is not due to any of the impediments of the ancient common law.

Certain other statutes, affecting the obligation of tenants, remain to be considered. The statute of 6 Anne, c. 31, relieved an owner from liability for an accidental fire starting in his house or chamber, and the statute of 14 George III, chapter 78, extended the exemption to such fires starting anywhere on one's estate. Primarily, those statutes were intended to relieve from the rigorous rule of the ancient law which made a person liable for the consequences of a fire originating upon his own premises and spreading to his neighbor's. But they are broad enough to affect the liability of a tenant to reversioner or remainderman, and have been so construed (See 4 Kent, *82), and they have been held to be part of the law of this state. (*Lansing v. Stone*, 37 Barb. 15, and see *Hoffman* v. *King*, 160 N. Y. 618, at page 622.) Whilst a fire is not accidental, within the meaning of those statutes, if caused by the negligence of the tenant, or his servants (*Filliter* v. *Phippard*, 11 Ad. & E. [N. S.] 347), and the statute literally applies only to a fire beginning on one's premises, there is no substantial reason for making a distinction as to the liability of a tenant between an accidental fire and one caused by the negligence of strangers, or between a fire accidentally beginning on the premises and one spreading thereto from adjoining premises. By chapter 345 of the Laws of 1860 (now section 227 of the Real Property Law) a lessee or occupant of a building is relieved from the obligation to pay rent in case it is destroyed or rendered untenantable by the elements or any other cause without any fault or neglect

on his part.   In the absence of covenant, no obligation rests upon either the landlord or the tenant to rebuild in such case.   (*Smith* v. *Kerr*, 108 N. Y. 31.)   The law would be in an anomalous state if a tenant, though under no obligation to rebuild or to pay rent, were still answerable in damages, or if, though not liable for the injury or destruction of buildings without his fault, he were still liable for other injuries to the premises though equally without fault.   Those statutes do not in terms apply to a case like this, doubtless for the reason that no one had ever attempted to hold a tenant responsible in such case.   The written and the unwritten law should be consistent, and the whole body of law governing the obligations of tenants should by analogy be made to harmonize with the said statutory rules.

Moreover, the statutes of Marlbridge and Gloucester were superseded in this state by chapter 6 of the Laws of 1787, which provided: " That no tenant for life or years or for any other term, shall during the term make or suffer any waste   *   *   *   without special license in writing making mention that he may do it   *   *   * and whoever shall be convicted of waste shall lose the thing or place wasted and shall recompense thrice so much as the damage shall bo taxed at by the jury." That statute was substantially re-enacted by 2 R. S. 334, and is now embodied in sections 1651 *et seq.* of the Code of Civil Procedure.   Whilst the construction given a similar statute of earlier times may have weight, our own statute should be construed according to the social conditions of its time and should not be controlled by the construction of a statute passed in the thirteenth century.

In *U. S.* v. *Bostwick* (94 U. S. 53, 68) Chief Justice Waite, speaking for the court, said: " It [referring to the implied obligation of the tenant] has never been so construed as to make a tenant answerable for accidental damages, or to bind him to rebuild, if the buildings are burned down or otherwise destroyed by accident." In

*Sampson* v. *Grogan* (21 R. I. 174) it was held by the Supreme Court of Rhode Island in a well-reasoned opinion that the mere acceptance by a life tenant of a devise of real estate, containing a direction to keep in repair, did not impose upon him the duty to rebuild in case of the accidental destruction of buildings by fire. (See, also, *Earle* v. *Arbogast,* 180 Pa. St. 409.) One case only in this state has been called to our attention in which it was held that a tenant was liable for the acts of strangers. (*Reagan* v. *Luthy,* 16 Daly, 413.) That was a case of voluntary waste. Its authority was questioned by the Appellate Term of the Supreme Court in *Rimoldi* v. *Hudson Guild* (59 Misc. Rep. 480). In *Beekman* v. *Van Dolsen* (63 Hun, 487) it was held by the General Term in the first department that a tenant was not liable, as for permissive waste, because of the partial destruction of the retaining wall, bulkhead and dock upon the leased premises caused by the dock department of the city of New York in changing the bulkhead line, and· it was said by Mr. Justice PATTERSON, after referring to the authorities, that " to constitute this particular kind of waste [*i. e.,* permissive waste] there must have been neglect, omission, sufferance or permission of the tenant." In *Robinson* v. *Wheeler* (25 N. Y. 252) a tenant was held liable for his own negligent burning of a building. In no case in this state, or anywhere for that matter as far as our research goes, has a tenant been held liable as for permissive waste for the negligent acts of strangers. *White* v. *Wagner* (4 Har. & J. [Md.] 373) is an extreme case, but that was a case of voluntary waste, and it might have been decided on another ground.

The plaintiff, however, relies upon cases in which the assumed liability of the tenant has been held to furnish ground for the maintenance of the action by him against the wrongdoer. (*Cook* v. *Champlain Transportation Co.,* 1 Denio, 91; *Austin* v. *Hudson R. R. R. Co.,* 25 N. Y. 334; *Baker* v. *Hart,* 123 N. Y. 470.) It must be admitted

that the ground of the decision in the *Cook* case makes it
precisely in point. It was decided on the authority of
*Attersoll* v. *Stevens* (*supra*), which, as I have said, was
a case of voluntary waste. It was cited in *Baker* v.
*Hart* as authority for the statement " that tenant for life
or years is bound to answer to the owner for any waste
committed, even though it be the act of a stranger," a
doctrine which was held to be wholly inapplicable to
that case. Moreover, the further language of Judge
FINCH in that case suggests, if it does not plainly show,
that he was speaking of voluntary waste. *Austin* v.
*Hudson R. R. R. Co.* was an action by lessees, who had
erected buildings, for damages caused by their being
undermined by the negligent excavation of his own soil
by the adjoining owner. The plaintiffs had sublet the
premises, but still had a reversionary interest in their
unexpired term. Manifestly the plaintiffs were entitled
to recover some damages, either the value of the build-
ings, the cost of their repair, or the value of their use
during the residue of the term, and the question as to the
true measure of damages was not properly raised at the
trial. So that whatever was said as to the application of
the *Cook* case was obiter. It is quite true that both
Judge WRIGHT and Judge ALLEN referred to the case as
one of waste, for which the plaintiffs were responsible to
the landlord, and cited the *Cook* case as authority, but it
is difficult to determine from the report of the case pre-
cisely on what ground a majority of the court put the
decision. In one part of his opinion Judge ALLEN said:
" The defendants contend that because their wrongful
act may have damnified the inheritance, giving an action
to the reversioner, the tenant could have no action for
the injury to him. But each may have a remedy for the
damages sustained in respect to his particular estate. If
the same act deprives the tenant of the temporary enjoy-
ment of his term, and also injures the inheritance, the
injury to the tenant is not merged in that done to the owner

of the larger and reversionary estate." (p. 344.) It thus appears that there is no binding decision of this court upon the point whether an injury by the negligent acts of third parties is waste, for which the tenant is liable to the reversioner or remainderman, and the consequences of holding such a doctrine would be too serious to justify us in resting the right of the plaintiff to recover upon it.

The doctrine has only been invoked in this state to permit the tenant to recover from the wrongdoer. (*Cook* v. *Champlain Transportation Co., supra; Austin* v. *Hudson R. R. R. Co., supra; Dix* v. *Jaquay*, 94 App. Div. 554; *United Traction Co.* v. *Ferguson Contracting Co.*, 117 App. Div. 305.) And it may well be that a rule so long recognized may be adhered to without adopting the reason originally assigned for it. In *Dix* v. *Jaquay* (*supra*) the Appellate Division in the third department naturally followed the *Cook* case, but in a well-reasoned opinion Mr. Justice (now presiding justice) SMITH suggested what appears to us to be a much better reason for maintaining the rule than that assigned in the *Cook* case. Notwithstanding the removal of the impediments of the ancient common law, there will be many cases in which, for practical reasons, the tenant alone can compel redress from the wrongdoer, and it should not be open to the latter to escape liability by asserting the rights of a third party, under whom he does not claim. The tenant has not only possession, but an interest in the premises, in this case a life estate, and there is equal, if not greater, reason for allowing a full recovery by him as for allowing a depositary, who has no interest, but only possession, to recover for the conversion of, or an injury to, the deposit. A bailee, though not liable to the bailor, may recover for the wrongful act of a third party resulting in the loss of, or injury to, the subject of the bailment. (*Kellogg* v. *Sweeney*, 1 Lans. 397; 46 N. Y. 291. And see *Mechanics & T. Bank* v. *F. & M. Bank*, 60 N. Y. 40; *Russell* v. *Butterfield*, 21 Wend. 300; *Faulkner* v. *Brown*, 13 Wend.

63; *Finn* v. *Western Railroad Co.*, 112 Mass. 524; *Johnson* v. *Holyoke*, 105 Mass. 80; *Chamberlain* v. *West*, 37 Minn. 54.) If the bailee recovers, he holds the recovery as trustee for the bailor. A recovery by either bailor or bailee will bar an action by the other. (*First Commercial Bank of Pontiac* v. *Valentine*, 209 N. Y. 145, and citations at page 150; *Woodman* v. *Nottingham*, 49 N. H. 387.) The principle is the same as that applied in *Madison Square Bank* v. *Pierce* (137 N. Y. 444), in which it was held that the payee might recover from the maker the full amount of a promissory note, notwithstanding an indorser had paid part, the plaintiff in such case becoming trustee for the indorser of so much of the recovery as represents the amount paid by the latter.

The recovery in this case might be treated as a substitute *pro tanto* for the land damaged, as would be the case of the proceeds of a sale (See *Ackerman* v. *Gorton*, 67 N. Y. 63), the plaintiff being entitled to the life use of it and becoming trustee of the principal for the remaindermen. (See *Smith* v. *Van Ostrand*, 64 N. Y. 278; *Leggett* v. *Stevens*, 185 N. Y. 70, at page 76.) The recovery might be apportioned between life tenant and remaindermen according to their respective interests and the court might require the life tenant, if intrusted with the principal, to give security. (See *Matter of Camp*, 126 N. Y. 377; *Matter of McDougall*, 141 N. Y. 21.) It is for the court to make proper provision for the protection of the rights of remaindermen. The wrongdoer is only concerned in being protected from a second suit, and we are of the opinion that it must be held, as a necessary corollary to the proposition that the life tenant may recover all the damages, that such a recovery will bar an action by the remaindermen.

The judgment should be affirmed, with costs.

Werner, Hiscock, Chase, Collin, Hogan and Cardozo, JJ., concur.

Judgment affirmed.