BONATI *v.* WELSCH, Executor, &c., of BONATI, deceased, and others.

The rights of a wife, as creditor of her husband under the law of France, where the marriage was contracted, continue and attach to the property of the husband where he abandons her and dies domiciled in this State.
Accordingly, where the husband had appropriated the proceeds of real estate inherited by the wife during coverture, and she was, by the French law entitled to priority of payment out of his estate, held, that such right to priority exists as against his legatees, though the property bequeathed had all been acquired by him in this state subsequent to his desertion of the wife.

APPEAL from the Supreme Court.   Action by a widow residing in France, against the executors and legatees of her deceased husband, to recover the value of certain real estate .

inherited by her, which was sold with her assent and the proceeds received by her husband while she was living and domiciled with him in France.   Upon the trial these facts were proved and found:

On the 23d day of January, 1823, the plaintiff married at Severne, in France, Maximilian Bonati, and continued his wife until he died in 1849.

The plaintiff was born in France, and the husband in Germany, and both were domiciled and resided in France at the time of the marriage.   They had issue of that marriage, the defendants, Antoine and Marie A. Bonati, both of whom were born in France while their parents were residing there.   The plaintiff and Bonati continued to live together in France in the relation of husband and wife until Bonati quitted France in 1837, and came to the city of New York, leaving the plaintiff and the two children in France, where they have since resided.   He (Bonati) became a naturalized citizen of the United States, and continued in this state until his decease. There was no special contract of marriage between them, and none except that created by the laws of France.

In 1830, the plaintiff, on the death of her mother, became owner, by title of succession, of certain real estate (or immovable) in France, which was sold by mutual consent of the plaintiff and her husband; and the money arising from the sale, amounting to nineteen thousand two hundred and fifty-four francs, was paid to and retained by him.   No part had ever been paid to her, nor had she ever been in any way compensated for it; except to the extent of nine hundred and eighteen francs.

Bonati never returned to France, and at his death was worth several thousand dollars.

He left a will, of which the defendant Welsch was executor, by which he bequeathed a legacy of four hundred dollars to each of his said two children, and gave the residue of his property to the executor in trust for two illegitimate children and their mothers.   All the testator's debts had been paid, and considerable property remained in the hands of the executor.

No provision is made in the will to recompense the plaintiff for the price of the real estate sold as before mentioned.

By the French law, Bonati was entitled to receive the price of said real estate when it was sold and to retain it, and enjoy the income during the existence of the community. At the dissolution of the community, which took place at his (Bonati's) decease, the plaintiff was entitled to take from the property of the community, the amount for which said real estate had been sold, and in case of insufficiency of that property, she was entitled to claim and receive the deficiency from the property of her late husband; and her claim against the property of the community took precedence of any claim of the husband's representatives; and as to the property left by him, she was entitled to payment before his creditors.

Bonati left no property, either of the community or otherwise, in France at the time he left that country.

The sections of the Code Napoleon, on which the above finding of the French law is based, are referred to in the opinion of DAVIES, J.

The Civil Code of France was given in evidence on the trial, and all the provisions thereof, applicable to or affecting this case, were read on such trial, and the laws of France therein contained, constitute a portion of the facts upon which the case was heard.

At the trial a judgment was entered, granting the prayer of the complaint and ordering repayment by the executor of the amount received by Bonati on the sale of his wife's real estate, with interest from the time of his death. This judgment was affirmed on appeal at general term, in the first district, and the defendants appealed to this court.

*Charles P. Kirkland,* for the appellants.

*John W. Edmonds,* for the respondent.

DAVIES, J. By section 1387 of the Code Napoleon, the law in reference to the conjugal relation is prescribed in de-

fault of special agreement; and by section 1393, in default of special stipulations, the law of community prevails. By sections 1401 and 1402, the community consists of such movable property as fall to either party during the marriage by any title whatever, and all immovables acquired during marriage. By section 1404, the immovables which fall to them during marriage by title of succession do not enter into the community. Section 1433 provides that if an immovable belonging to one party be ·sold and the price paid into the community, there is ground for the deduction of the price so paid in from the community for the benefit of the party who was proprietor of the immovable sold. Section 1436 declares that recompense for the price of an immovable belonging to the wife is claimable by her out of the property of the husband, in case of the insufficiency of the goods of the community. By section 1470, on the dissolution of the community, from the mass, each one deducts the price of immovables which have been alienated during the community, and for which compensation has not been made. By section 1471, the shares of the wife take precedence of the husband, and by section 1472 the wife is entitled, in case of insufficiency in the community, to exercise her claims out of the property of the husband. Section 1441 declares that the death of either of the parties works a dissolution of the community, and by section 1453 after the dissolution, the wife has the power to accept or renounce it. By section 1493, the wife who renounces has a right to receive the price of the immovables alienated, for which compensation has not been made to her. And by section 1495, she may exercise all actions and previous demands as well against the goods of the community as against the personal goods of her husband.

From this examination of the French law it follows that the property of this plaintiff which came to her during marriage, by succession from her mother, being immovable, still belongs to her: that she could alienate it, as she did, with her husband's consent: that he had the management of it,

and had a right to retain the avails of the sale, and keep them during the existence of the community, and had a right to the enjoyment of its emoluments; and that on his death, he having received the price of its alienation, she had a valid claim for that price, first to be paid out of the property of the community, and that failing, out of the property of the husband, and that her claim was entitled to priority of payment.

Such would have been the rights of the parties, if both had continued to reside in France.

Are these rights changed by the circumstance of the husband coming to this country and dying here?

That the price of the wife's immovables thus sold and realized by the husband, constituted a valid debt against him by the laws of France, where this marriage took place, admits of no doubt. Is the debt discharged by the husband's coming to this country?

The rule laid down by Parsons on Contracts (2 Pars., 110), would seem to answer this suggestion. He says: "It is the general rule, both in England and in this country, that the incidents of marriage and contracts in relation to marriage, as settlement of property and the like, are to be construed by the law of the place where these were made; for any different construction cannot be supposed to carry into effect the intentions and agreements of the parties, or to deal with them justly."

Many cases are cited to sustain the text, and among others, those in our own state, of *Decouche* v. *Savetier*, 3 John. Ch., 190; *Crosby* v. *Berger*, 3 Ed. Ch., 538, and *De Barante* v. *Gott*, 6 Barb., 492. These cases hold that where there is an express contract between the parties, that contract will be enforced, and the rights acquired under it maintained and upheld, though there be a change of domicil. Rights dependent on the nuptial contract are governed by the *lex loci contractus.* There would be no difficulty in this case, therefore, in sustaining the rights and claims of the plaintiff, if the provisions of the Code Napoleon had been embraced in an express contract. Some foreign jurists hold that the law of matrimonial domicil attaches all the rights and incidents of marriage to it *proprio*

*vigore,* and independent of any supposed consent of the parties. (1 Boullenois Obser., 29, pp. 741, 750, 757, 758; Huberus, Lib. 1, tit. 3, De Confl. Leg., § 9.)

Others hold that there is in such cases an implied consent of the parties to adopt the law of the matrimonial domicil by way of tacit contract, and then the same rule applies as in cases of express nuptial contracts.   Dumoulin was the author, or at least the most distinguished advocate, of this doctrine. (Story on Conflict of Laws, § 147.)   This rule has also been adopted by Bouhier, Hertius, Pothier, Merlin, and other distinguished jurists. (Id., § 148.)

Story, after reviewing the opinions of jurists and the decisions having a bearing upon the question, sums up the whole by saying, in section 159, that perhaps the most simple and satisfactory exposition of the subject, or at least that which best harmonizes with the analogies of the common law is, that in the case of a marriage, where there is no special nuptial contract, *and there has been no change of domicil,* the law of the place of celebration of the marriage ought to govern the rights of the parties in respect to all personal or movable property, whenever acquired or wherever situate; but that real or immovable property ought to be left to be judged by the *lex rei sitœ,* as not within the reach of any extra-territorial law. When there is any special nuptial contract between the parties, that will furnish a rule for the case, and, as a matter of contract, ought to be carried into effect everywhere, under the general limitations belonging to all classes of contracts.

In this case a new element is introduced by the removal of the husband from France, and consequently a change of his domicil.

In section 161, Story quotes from Bouhier, who lays down the rule in general terms that in relation to the beneficial and pecuniary rights (*les droits utiles et pecuniaries*) of the wife, which result from the matrimonial contract, either express or tacit, the husband has no power by a change of domicil to alter or change them, according to the rule *nemo potest mutare consilium suum in alterius injuriam,* and he insists that this

is the opinion of jurists generally. To the same effect that the change of domicil by the husband shall not deprive the wife of any separate interests or separate rights she may have, is the case of *Harteau* v. *Harteau* (14 Pick., 181).

And this rule is a reasonable and proper one. As a general rule, the domicil of the wife follows that of the husband and there is much force in the argument, that in the absence of an express agreement defining the matrimonial rights, the law of the contemplated or any future domicil should govern. But in the case now under consideration, the domicil of the wife has not been changed, and the rights she acquired by the tacit contract made in the matrimonial domicil are not, we think, lost or impaired by the change of the domicil of the husband. Those rights did not mature until the death of the husband. They were postponed till the happening of this event, and then by the law of the matrimonial domicil, by virtue of the tacit contract made between the parties, the right of the wife to a return of all her individual property received by the husband, revives and can be enforced.

We see no reasons of public policy, why rights thus secured should not be recognized or enforced, equally as those arising from an express contract.

The judgment must be affirmed, with costs.

COMSTOCK, Ch. J., DENIO, HOYT and JAMES, Js., concurred.

MASON, J. (Dissenting.) It is only necessary to state a few familiar and well settled principles of law to show that the judgment of the court below is erroneous, and should be reversed.

The universal doctrine now recognized by the common law is, that the succession to the personal property is governed exclusively by the law of the actual domicil of the intestate at the time of his death. (*Bempde* v. *Johnstone*, 3 Ves., 198; Story's Conflict of Laws, § 481; *Harvey* v. *Richards*, 1 Mas., 418; *Holmes* v. *Remsen*, 4 Johns. Ch., 460; 20 J. R.,

229; *De Couch* v. *Savatier*, 3 Johns. Ch., 190, 211; *Shultz* v. *Pulver*, 3 Paige, p. 182; *DeGobry* v. *DeLastin*, 2 Harr. & Johns., 193; *Hunt* v. *Moultrie*, 23 N. Y., 394.) The general rule also is, that the law of the testator's domicil, at the time of his death, controls the testamentary disposition of all his personal property, and of all his real property situated within the jurisdiction of the State of his domicil. This is the rule both in England and this country. (*Stanley* v. *Bernes*, 3 Hagg. Ecc., 373–465; *Moore* v. *Darrel*, 4th id., 346, 352; *Price* v. *Dewhurst*, 4 Mil. & Craig, 76, 80, 81; 3 Curt., 468; 2 Sim., p. 7, n. 2; *Matter of Easton's will*, 6 Paige, 187; *Matter of Roberts' will*, 8 Paige, 446, 519; *Thornton* v. *Curling*, 8 Sim., 310; Story's Conflict of Laws, § 467; *Countess of Ferraris* v. *Marquis of Hertford*, Eng. Jur., April 1st, 1843, p. 262; 3 Curt., 468; *Desebats* v. *Berquier*, 1 Binn., 336.) This doctrine has been repeatedly recognized in the American courts. (*Holmes* v. *Remsen*, 4 Johns. Ch., 460–469; *Harvey* v. *Richards*, 1 Mason, 381, 408, n; *Dixon's Exec'rs* v. *Ramsey's Exec'rs*, 3 Cranch, 319; 2 Johns. & Harr., 193; 12 Wheat.; 169; 2 Doug., 522; 9 Peters, 483, 504, 505; Story's Conflict of Laws, 468.) The doctrine of the courts is, that there is no difference between the case of succession by testament and intestacy; that they are both governed by the law of the testator or intestate.

There can be no doubt but, from the evidence in the case, the testator's domicil, at the time of his death, was in the State of New York. He quitted France in 1837, and came to this State; was naturalized, under our laws, became a citizen, embarked in business, and resided here until he died, in the year 1849. All the legal requisites necessary to constitute a domicil here, existed in his case—actual residence, naturalization, and the intention to make a permanent residence here. (*Laneurville* v. *Anderson*, 22 Eng. Law and Eq., 59; *Hoskins* v. *Matthews*, 35 id., 532; Story's Conflict of Laws, § 44.) Naturalization alone constitutes a most solemn declaration of the intention of the party to abandon his native State and to make the adopted country his domicil and future home, and

the French law makes this simple fact conclusive evidence of the acquisition of a new domicil. (Code, art. 17.) The fact that the testator actually remained in France up to the death of her husband, and still continues, cannot, in the least, affect the case before us; for the domicil of the husband is the domicil of the wife, and she can have no other or separate one. There can be but one matrimonial domicil at the same time. (*Warrender* v. *Warrender*, 9 Bligh, N. R., 103, 104; *Greene* v. *Greene*, 11 Pick., 411; Story's Conflict of Laws, § 41, ch. 55; 2 Parsons on Contracts, 94, 112.) The rule upon this subject is, that woman, on marrying, acquires the domicil of her husband, and changes it with him. (2 Parsons on Contracts, 93, 112; 9 Bligh, 89, 103, 104.)

It seems to me very clear, therefore, that the laws of New York, and not of France, must control in the administration of this property under the will of the testator, as his domicil and his property was here at the time of his death. The laws of France can have no application in such a case as this, which depends solely upon the marital rights, governed, as they all necessarily must be, by the matrimonial domicil at the time of the death of the testator. The court below fell into an error, in following a class of cases which held that ante-nuptial contacts in relation to the settlement of property and the like, are to be determined and sustained by the law of the place where they were made, notwithstanding a change of the matrimonial domicil. The cases referred to by the learned judge, who delivered the opinion of the court below, are all of this character. These cases rest upon express contract and the rules in such cases is that the *lex loci contractus* governs. Such are the cases of *Decouche* v. *Savatier* (3 Johns. Ch. R., 190); *Crosby* v. *Berger* (3 Ed. Ch. R., 538); and *De Barante* v. *Gott* (4 Barb., 492), cited by the court below. The case is very different where the wife's right of property arises by operation of law as a mere incident to the marital relation. In the latter case the right does not rest upon any contract, express or implied, between the parties, but arises solely by the operation of law. It is the silent effect of the relation entered

into by them, not as in itself implied and fixed in and of the marriage contract, but merely as that contract calls into operation the positive institution of the municipal law (*Lawrence v. Miller*, 1 Sand. S. C. R., 516), and consequently the wife's right of property in such cases is controlled by the domicil of the husband at the time of his death. The French law of community as applicable to the case, does treat the wife as a creditor and the husband as a debtor for what he spends from time to time; but the community continues until the death of the party and the French law steps in and fixes the rules of succession peculiar to itself. Bonati cannot, upon any principle known to our laws, be regarded as a debtor to his wife, and she be allowed to recover as a creditor. There is no evidence in the case that he brought any of the property of the community with him when he came to this country. On the contrary when the defendant was going into proof to rebut any such inference, the plaintiff admitted that she had failed to make any such proof.

It is fair to infer, therefore, that he had spent this money in France, and never held any of it either in trust or otherwise under our laws. I am of opinion for the reasons stated, without considering the other questions in the case, that this judgment should be reversed and the complaint dismissed.

SELDEN and LOTT, Js., did not sit in the case.

Judgment affirmed.