(129 App. Div. 558.)

### PUNSKY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. December 30, 1908.)

1. EVIDENCE (§ 594*)—WEIGHT AND SUFFICIENCY—UNCONTROVERTED EVIDENCE.
   The court is not required to believe testimony because it is uncontradicted.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

2. MUNICIPAL CORPORATIONS (§ 827*)—TORTS—WATER COURSES.
   In the absence of negligence in the manner of collecting water and furnishing outlet therefor through culverts or sewers, a city is not liable for damages from the flooding of a cellar, caused by the natural flowing of water along the street after a heavy downpour of rain.
   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1772–1776; Dec. Dig. § 827.*]

3. MUNICIPAL CORPORATIONS (§ 845*) — TORTS — WATER COURSES—ACTIONS FOR INJURIES—EVIDENCE.
   Evidence in an action against a city for damages to property by the flooding of a cellar examined, and held to show that plaintiff's claims were exaggerated and groundless.
   [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 845.*]

Appeal from Municipal Court of City of New York.

Action by Theodore Punsky against the City of New York, From a judgment for plaintiff, defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and MILLER, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

James D. Bell (James T. O'Neill, on the brief), for appellant.
Benj. Frindel, for respondent.

GAYNOR, J. These two actions were for damages against the city, one for flooding the plaintiff's cellar on October 9, 1903, and the other on August 10, 1904, and were tried together. The prayer for damages in each was for $500, and the amount allowed in one was $346.25 and in the other $369.75. How the plaintiff was allowed to prevail passes credulity. If everything or anything had to be believed in court simply because there is no witness to contradict it, the administration of justice would be a pitiable affair. The testimony of the plaintiff is that he was in the cork business in this cellar; he bought secondhand corks of peddlers and sold them again; it rained during the day, and the water was 1½ feet deep on the sidewalk and overflowed into the cellar; it was 5 feet deep in the cellar; he had four men working there; a cask of oxalic acid was destroyed; how the water got into the cask is not shown; two cork-cutting machines, worth $150 apiece, were destroyed; he paid $10 for repairs to them and then sold them for $3 for junk; how they were or could be destroyed by the water does not appear; it was all out the second day; 12 sets of cork knives were destroyed; they were "rusted and spoiled"; he "made presents of them to good friends"; a writing desk was ruined, total loss; likewise a stove, total loss; how, appears in no case; 25 to 30 sieves to drain water from corks ruined; 100 gross of Rhine wine corks worth 65 cents a gross, injured, and sold for 8 cents a gross; 500 whisky corks so much injured as to be a total loss; 300 gross of amber corks worth 20 cents a gross, reduced to 2 cents a gross by the injury; 200 gross of quart corks reduced from 20 cents to 4 cents a gross; 150 demijohn corks, 75 varnish can corks and a miscellaneous lot reduced in the same way; 500 gross of caps for beer bottles, a total loss; in addition a lot of corks floated out into the street; it was "filled with them"; how they got through the windows is left in doubt; whether any one closed the windows is left in doubt; whether the water in the cellar was up to the windows is left in worse doubt, although it was 1½ feet deep on the sidewalk if the plaintiff's oath is any good; in fact it was so deep when he got home that he could not get into the house at all; why the things, and especially the boxes of corks, were not removed when the water began to come in is left without so much as a word; how a cork can be rotted and ruined by water in 48 hours or less was left for the trial judge to imagine and to believe as best he could; that he did believe it is attested by the fact that the items of loss on corks were allowed; in fact, substantially everything sworn to was allowed, cask of oxalic acid, machines, knives, desk, stove, corks, caps, everything.

When the law of the case is looked to, the judgments are still more extraordinary. The evidence is that there was a downpour of rain which flooded the street. There is no evidence that the city turned the water of other localities upon this locality, through the gutters, or through sewers, and that the sewers became choked thereby, and belched, and that the collected waters of other localities were thus cast into the plaintiff's place. For such affirmative acts of negligence

the city would be liable, but for the natural flowing of the water of that locality along the street it would not be liable. Smith v. Mayor, 66 N. Y. 295, 23 Am. Rep. 53; Lynch v. The Mayor, 76 N. Y. 60, 32 Am. Rep. 271; Seifert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664. The city should not be made the victim of such exaggerated and groundless actions as this.

The judgments should be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.