In re MAJOT'S ESTATE.

(Supreme Court, Appellate Division, First Department. December 10, 1909.)

TAXATION (§ 867*)—TRANSFER TAX—PROPERTY SUBJECT TO.

Where a citizen of France, who married there without an express antenuptial contract, so that the wife under the French law had a community of interest in his property, migrated with his wife to the United States and died intestate, a resident of New York, owning property therein, the wife was not entitled to one-half of the property as exempt from taxation, but the entire property was subject to the transfer tax.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 867.*]

Scott and Clarke, JJ., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax on the property of Paul Auguste Eleonore Majot, deceased. From an order of the Surrogate's Court, fixing the transfer tax, Charles H. Gaus, State Comptroller, appeals. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Millard H. Ellison, for appellant.
Coudert Bros., for respondent.

HOUGHTON, J. The decedent was a citizen of France, and married the respondent in that country, and they migrated to the United States, and he died a resident of the state of New York, intestate, owning real property therein and possessed of certain personal property. The marriage in France was without express antenuptial contract; but by the Civil Code of France a marriage without express contract gives a community of interest in the property owned by either party to the marriage at the time of its celebration, as well as any property subsequently acquired by either or both. The respondent claims that by virtue of her marriage with the deceased in France, under the law giving her community of interest in whatever property her husband had or should acquire, she is entitled to one-half of his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

real and personal property free from the transfer tax imposed by the laws of the state of New York, and the learned surrogate has so held.

We think such a contention cannot be upheld. The decedent, when he became a citizen and resident of the state of New York, submitted himself and his property to its laws, and especially to its laws respecting taxation. The transfer tax law (Consol. Laws, c. 60, § 220), imposing a tax upon the transfer of any property by will or intestate law of the state, or in contemplation of death, is a part of the state system of taxation for the raising of revenue for state purposes. Without doubt there are within the state of New York men who married their wives in every civilized and semicivilized country of the world, and afterwards migrated to this country, and have already or will accumulate property within this state. In those countries in which they were married various and peculiar laws governing marital rights and community of interest in property no doubt exist. Whatever may be the ethics with respect to comity between nations, or the opinion of learned writers on the subject, it is apparent that this state cannot recognize, in the exemption of property from taxation through transfer by death, all of these various laws of the several countries from which its residents originally may have come. It must be held, for our own preservation and the upholding of our own system of taxation, in the absence of an express antenuptial contract, at least, that the various common or statutory laws of the several countries, giving community or other interest to husband and wife, do not constitute a contract capable of nulifying the laws of the state in respect to the taxation of the transfer of property on death. There is very grave doubt whether the law of France with respect to community of interest on marriage does more than create a status between the parties so long as they remain in France and with respect to property in France. When a citizen of France voluntarily removes to another country and becomes a resident thereof, he loses that status, and does not take with him a partnership contract, enforceable contrary to the law of the country which he adopts.

The learned surrogate placed his decision upon the authority of Bonati v. Welsch, 24 N. Y. 157. In that case a Frenchman sold real property belonging to his wife with her consent, and retained the proceeds. By the law of France he had the right, with her consent, to sell her property and to retain possession of the proceeds; but, in case he had not repaid her before death, she had a claim, which was declared to be a preferred one against his estate, for reimbursement. This claim was recognized by our courts, and allowed. Stress is laid, however, in the opinion, upon the fact that the deceased became possessed of the money in France and brought it away with him, and that the wife always remained in France, where the husband abandoned her. This decision comes far short of holding that the law of community of interest read into the marriage contract in France applies to property acquired outside of France, after the parties have ceased to be residents and citizens, and against the express tax law of their adopted residence. Had there been an express antenuptial contract, our courts would no doubt recognize it, as was done in Decouche v. Savatier, 3 Johns. Ch. 190, 8 Am. Dec. 478, and property passing by

virtue of such express agreement would be in satisfaction of a debt or obligation, and would not be taxable, because it would not be transferred in the manner specified by the transfer tax law. Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed on opinion below 178 N. Y. 575, 70 N. E. 1094.

Our conclusion is that the one-half of the property of the decedent is not exempt from taxation; and that the order of the surrogate so adjudging was erroneous, and must be reversed, and the order made upon the appraisal affirmed, with costs to the appellant.

INGRAHAM and LAUGHLIN, JJ., concur.

SCOTT, J. (dissenting). Paul A. E. Majot and his wife were married in France, in which country they were both then domiciled. At some time after their marriage they moved to and became domiciled in this country, where Majot acquired certain real and personal property. He died intestate, leaving his widow and two children. He and his wife did not execute a written marriage contract. The widow claims that, by virtue of the term imported into the marriage contract by the French law, she is entitled as survivor to one-half of decedent's property, and that, her right to receive it depending upon her contract right, and not upon a will of the decedent, or the intestate laws of this state, the property so received is not liable to taxation under the transfer tax law. It seems to be conceded on all hands that this contention on the part of the widow would be entirely sound, if the parties had entered into a written marriage contract providing for a community of goods. Decouche v. Savatier, 3 Johns. Ch. 190, 8 Am. Dec. 478; Bonati v. Welsch, 24 N. Y. 157; Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed on opinion below 178 N. Y. 575, 70 N. E. 1094.

The parties having been married in France, then the country of their domicile, the terms of their contract of marriage, with the resulting rights and obligations, were determined by the lex loci contractus. Bonati v. Welsch, supra. The law of France prescribes that, in default of a special agreement, the law of community prevails. By the French Code (section 1400 et seq.) the community consists of any personal property either spouse owned individually before the marriage and all personal and real property acquired during coverture, with certain exceptions not important here. In case of death of one of the spouses the assets of the community, after all debts are paid, are to be divided equally between the estate of the decedent and the survivor, who receives his or her half of the property in his or her own right as part owner thereof, and not in succession to the deceased. Bonati v. Welsch, supra, dealt with a marriage contracted under such circumstances, and held that a wife, whose husband had deserted her and came to America, leaving her behind in France, was entitled to share in the community property by virtue of the contract made between the parties by operation of the French law. The Supreme Court of the United States had before it a case arising under the Code of Porto Rico, which is similar to the French Code. Said the court:

"Between the husband and the wife, by virtue of marriage, in the absence of a contract to the contrary, a legal community supervened." Garzot v. De Rubio, 209 U. S. 299–300, 28 Sup. Ct. 548, 555, 52 L. Ed. 794.

In England it is well settled that the terms of the law are to be read into the marriage contract, in the absence of an express agreement. In De Nichols v. Curlier, [1900] App. Cases 21, Lord Halsbury said:

"I am wholly unable to understand why the mere putting into writing the very same contract which the law created between them without any writing at all should bar the husband from altering the contract relations between himself and his wife, when, if the law creates that contract relation, then the husband is not barred from getting rid of the obligations which upon his marriage the law affixed to the transaction. The French marriage confers, not only an implied, but an actual, binding, partnership, proprietary relation, fixed by the law upon the persons of the spouses, the binding nature of which, it appears to me, no act of either of the parties contracting marriage can affect or modify."

Commenting upon the foregoing decision, in considering another phase of the same litigation, Kekewich, J., said:

"The decision proceeded upon the broad principle that a contract operating by force of law, in the absence of expressions by the parties, is as complete and obligatory as a contract expressed, and must have effect given to it on the same footing. Unless, therefore, there is some inherent disability in some particular property, it must equally be applied to and enforced against all falling within its scope." De Nichols v. Curlier, [1900] 11 Chancery Div. 410.

It seems to me, therefore, that it must be held, both on reason and authority, that the contract which the parties entered into between themselves by their marriage included an agreement for community of property as confirmed by the laws of France. If so, it could only be abrogated by mutual consent, of which there is no evidence.

But it is said that the contract ceased to be operative when both parties assumed a domicile in this country. If so, it must be because a mutual revocation is to be presumed from the fact of a change of domicile. I am unable to see on what principle such a presumption can be arrived at. The general rule is that a contract made abroad, and legal where made, will be enforced here, unless repugnant to or inconsistent with our own laws. A contract for community of property is neither inconsistent nor repugnant to our laws; but, on the contrary, similar contracts between our own citizens are favored, and have frequently been enforced. Such a contract was well likened by Kekewich, J., to a copartnership. It is well established that a copartnership may be created by parol, even to deal in real estate. If such a copartnership were created, and the real estate was held in the name of one of the parties, upon a dissolution of the partnership by his death, it would hardly be claimed that the share or interest of the surviving copartner passed to him by virtue of the intestate laws, or was subject to a transfer tax. The analogy between that case and the present seems to me to be complete. The marriage contract between Majot and his wife respecting the ownership of the community property was no different from any partnership contract between parties competent to contract. So long as it contravenes no law of this state, it should be recognized and respected.

In my opinion the surrogate was right, and his order should be affirmed.

CLARKE, J., concurs.