MICHAEL STREBLER, Plaintiff, *v.* EVA WOLF and Others, Defendants.

Supreme Court, New York County, March 15, 1934.

*Grant Hoerner* [*E. Miller* of counsel], for the plaintiff.

*J. Franklin Tausch* [*Arthur Schneider* of counsel], for the defendants Eva Wolf, Susie Schweizer and Margaret Bachman.

*Richard J. Mackey,* for the defendant Herrlich Brothers.

*Helen H. Siegel,* for the defendant Ludwig Karch.

*Henry P. Velte [Francis Dean* of counsel], for the defendant German Society.

McLaughlin, J.   The plaintiff claims title to the property of his deceased wife under an antenuptial agreement entered into by them in France.   The defendants Eva Wolf, Susie Schweizer and Margaret Bachman claim the property by reason of gifts *causa mortis.*   The defendant Ludwig Karch, as administrator c. t. a. of the deceased's will, and Margaret Karch, Elizabeth Nonhebel, and the German Society of the City of New York, as administrator of Jacob Mayer, a deceased brother and beneficiary under his sister's will, all claim that the property should be distributed according to the terms of the will of the deceased.

A consideration of the testimony leads to the conclusion that there are no gifts *causa mortis* by the deceased.   The testimony offered fails to convince.   It lacks that clear and satisfactory quality so essential to the proof of gifts *causa mortis.   (Matter of Van Alstyne,* 207 N. Y. 298; *Matter of Housman,* 182 App. Div. 37; affd., 224 N. Y. 525.)   It may also be stated that there is no merit to the claim that there was an agreement between the deceased and her three nieces to the effect that she would compensate them for alleged services by giving them all her property.   I can find no credible evidence to support such a contention.   There is nothing in the case to show an express agreement.   The court has been unable to discern anything upon which to imply one.   Whatever meager services were rendered were in addition to those rendered by nurses paid by the deceased with her own money.   I cannot find from the facts that such services were rendered with the understanding that they were to be compensated for.   The law itself will not presume a promise to pay even though the services be rendered, which fact is negatived by the evidence.   *(Robinson* v. *Munn,* 238 N. Y. 40.)

The contest narrows down as to whether the deceased's property passes by will or whether it was, by virtue of the marriage, the common property of husband and wife, to be his upon her death. Some questions are raised as to the propriety of admitting into evidence the certified copies of the antenuptial agreement between plaintiff and his wife.   From the testimony regarding the French law I am satisfied that the notary public in France has an office where officially and by law he is required to keep on file in his office, among other papers, those designated as antenuptial agreements.

Under section 398 of the Civil Practice Act the agreement was properly certified and also properly received in evidence.   Of that

I do not think there may be any question. There have also been advanced several arguments to the effect that there has been no identity of the parties and that there is lacking common-law proof of "due execution and genuineness of the signatures." The evidence in this case shows overwhelmingly the identity of the parties. The will of the deceased, her letters, and the testimony of Mrs. Rolke, plaintiff's sister, together with the description of the parties in the marriage certificate and the antenuptial agreement, all decisively establish the identity of the parties. Nor is any common-law proof required of the genuineness of signature. The paper was filed in a public office and section 398 of the Civil Practice Act provides that a paper authenticated in this manner "is evidence." The other objections to the form of the exhibits are not well founded and must be disregarded.

The antenuptial agreement in this case was agreed upon, executed and delivered in France and is controlled by the provisions of article 1526 of the French Civil Code. It provides for a universal community of property, not only what the parties had at the time of the marriage, but also any property they might thereafter acquire. Article 3 of the antenuptial agreement provides that upon the death of either the assets and liabilities "shall belong to the survivor alone." This agreement was properly filed in the office of the notary public and the parties lived together thereafter for about two years. The deceased recognized these facts, for after she left the plaintiff she wrote him as follows: "If anything should happen to me, then what is left over belongs to you. You have the marriage certificate and the marriage contract."

That the law favors antenuptial agreements cannot be disputed. (*De Cicco* v. *Schweizer*, 221 N. Y. 431; *Phalen* v. *United States Trust Co.*, 186 id. 178; *Johnston* v. *Spicer*, 107 id. 185; *Bonati* v. *Welsch*, 24 id. 157; *Hurwitz* v. *Hurwitz*, 216 App. Div. 362.) "Antenuptial contracts * * * are favored by the courts and will be enforced in equity according to the intention of the parties whenever the contingency provided by the contract arises." (*Johnston* v. *Spicer, supra*, 191.)

The next question is what law controls upon the execution, interpretation and validity of this antenuptial agreement. Parties to a marriage contract are ordinarily presumed to have contracted according to the law of the place where the contract was made. (*Bonati* v. *Welsch*, 24 N. Y. 157.) Generally, too, contracts with regard to their execution, interpretation and validity are also determined by the law of the place where the contract is made. (*Union Nat. Bank of Chicago* v. *Chapman*, 169 N. Y. 538.) However, it is the intention of the parties that governs and by express

or implied agreement they may select another jurisdiction. Two things are then requisite — " the property is situated here and the parties intended that it should be administered here in accordance with the laws of this State." (*Hutchison* v. *Ross*, 262 N. Y. 381, 395.)

The intention of the parties here must be gathered from the instrument itself. They expressly agree that its construction and interpretation shall be governed by the provisions of the French Civil Code and the Civil Law. The agreement in part reads as follows: " These appearers have agreed upon the clauses, provisions and terms in accordance with the civil law, to govern the marriage intended to be executed by and between them, and which marriage will be contracted before the Bureau of Vital Statistics of Mertzwiller, as follows:

" Article I. There shall be in force between the future husband and wife the system of universal community of property, controlled by the provisions of the French Civil Code, in accordance with article 1526 of the French Civil Code, subject to the detailed provisions contained in the following articles."

This contract is valid under the French law. In that country there are two kinds of community of property. If the parties enter into an antenuptial agreement as here, that is known as the conventional community. If no agreement is entered into the law says there shall be a legal community. (Art. 1400 *et seq.*, French Civil Code.) By agreement entered into by the parties in this case they agreed that " in the event of the dissolution of their marriage by the death of either of them, the entire community property — assets as well as liabilities — including the separate property of the predeceased of the two, which has come into same, shall belong to the survivor alone." (Art. 3, Antenuptial Agreement.) The husband and wife are permitted to establish a community of the present and future property. (§§ 1526, 1497 and 1837, French Civil Code.) There are also articles 1520, 1525 and 1527 of this law which show that this may be done. However, article 1525 may be of itself slightly contradictory in terms because its wording indicates possibly that the heirs of the predeceased might be able to take the contributions that the deceased spouse gave to the community. The courts of France, however, have decided that, as in this case, the parties may specifically agree that all the community property of every description shall belong to the survivor, and held that article 1525 is intended to refer to a right of inheritance on the part of the heirs, only where the parties have not agreed to the disposition of the property upon the death of either. (*Pety* v. *Behagel*, plaintiff's Exhibit 29. See, also, *Carpentier's Heirs* v. *Mrs. Carpentier*, plain-

tiff's Exhibit 28.) The court is satisfied that this agreement was a valid agreement under the laws of France, which became effective upon marriage creating a partnership over which the plaintiff as husband had entire control. (Arts. 1399, 1837, 217, 1421, 1426.)

It is plain that all the property contested here is part of this community property, and it matters not where the property was located at the time of her death. Such is the legal effect of their agreement, but irrespective of that the law of the matrimonial domicile, which is France, will govern. (*Van Cortlandt* v. *De Graffenried*, 147 App. Div. 825; affd., 204 N. Y. 667.) Thus, the French law governs this case both by the agreement of the parties and by the fact that they were both domiciled in France at the time of the marriage. The fact that the deceased left the plaintiff and came to this country after living with him for two years does not alter the situation. Whatever her intention may have been, whether to be away from him permanently or only temporarily to regain her health, matters not. If temporarily absent, it is certain that there was no change of domicile and, therefore, her domicile was that of her husband. If she did effect a change of domicile, that too cannot affect the rights of the plaintiff, for neither party had the " power by a change of domicile to alter or change them." (*Bonati* v. *Welsch, supra,* 162 *et seq.*) It is the duty of a court of equity to enforce this agreement. (*Phalen* v. *United States Trust Co., supra; Rastetter* v. *Hoenninger,* 214 N. Y. 66.)

There has been no fraud committed by the plaintiff. Most of the allegations in this regard were abandoned on the trial, for no evidence was submitted concerning them. But one needs any discussion, and that is the claim that the marriage contract should be annulled because she married him only upon his promise that he would return to the United States after she married him. I cannot accept the testimony offered as true. " If everything or anything had to be believed in court simply because there is no witness to contradict it, the administration of justice would be a pitiable affair." (*Punsky* v. *City of New York,* 129 App. Div. 558, at p. 559.) Even if the court did accept it, including the statements in paragraph eighth of her will as true, nevertheless there is no basis for annulling this marriage. In the first place, the alleged fraud does not go to the essentials of the marriage. (*Griffin* v. *Griffin,* 122 Misc. 837; affd., 209 App. Div. 883; *Schaeffer* v. *Schaeffer,* 160 id. 48; *Feig* v. *Feig,* 232 id. 172.) Moreover, if there were possibly any fraud, the contract of such a marriage was ratified after the alleged injured party knew for two years that the other would not keep his promise or statement that he would return to the

United States. (*McGill* v. *McGill*, 179 App. Div. 343.) Nor can one find any proof that the deceased relied on the alleged statement. In fact, the evidence, including the letter of the deceased, shows quite clearly that the marriage was brought about by the representations of the deceased rather than those of the plaintiff. She knew what she entered into. She had full realization of what the result to her property would be, for in her letter to the plaintiff she stated that what " is left over belongs to you." There was no talk of fraud then because it is apparent that there is none in this marriage contract.

I have examined carefully the other matters raised by the defendants, but they do not merit any discussion except to state that it is conceded by the plaintiff that the claim of Herrlich Bros., Inc., should be allowed in full, and it is so ordered.

Judgment for the plaintiff. Submit findings of fact and conclusions of law accordingly on notice.