Chief Judge Desmond (dissenting).
Resolution of the dispute as to this property (or any part of it) by any law other than that of Spain, the matrimonial domicile, is utterly incompatible with historic and settled conflict of laws principles and is not justifiable on any ground. No policy ground exists for upsetting the uniform rules and no precedent commands such a result.
“ Conflict of Laws ” (or, more aptly, “ Private International Law”) rules involve no actual conflict or collision between the laws of separate jurisdictions but are the accepted methods of accommodation and comity between sovereign States, worked out consensually over the centuries, not arbitrarily or from mere politeness but as expressing reason and justice. Thus, as to real property the applicable law is always that of the State wherein the land is situated since it is an attribute of every sovereign to control his own actual territory. Movables, on the other hand, are considered to be incidental to their owner’s person and so to be governed as to title by the laws of his domicile. These are not ad hoc holdings subject to the moment or the mode or to the conveniences of a particular case but are part of the generally acknowledged fundamentals of international comity. The twentieth century with its shrinking distances and enlarging wars is a poor time to make sudden and uncalled for changes particularly when the changes are urged on us not because the old rules are outdated or proven to be unjust but, apparently, because in this particular case there appears in the record a small and unconvincing indication that this husband and his wife may have intended a result inconsistent with that which would result from application of the law of their domicile, Spain.
The majority of this court is throwing overboard not one but three of the oldest and strongest conflict rules: first, that with exceptions not pertinent here the law of the domicile of the owner governs as to the devolution of personal property (Cross v. United States Trust Co., 131 N. Y. 330); second, that the law of the matrimonial domicile controls as to the property and contract rights of husband and wife inter sese (Bonati v. Welsch, 24 N. Y. 157; Hendicks v. Isaacs, 46 Hun 239); and, third, that whether such personalty is separate or community property is determined by the law of the matrimonial domicile (Poe v. Seaborn, 282 U. S. 101,110).
*177 For no reason of law that we know of but on the authority of one decision of slight or no relevance (Hutchison v. Ross, 262 N. Y. 381) the majority chooses to turn its hack on these rules and to destroy the community status, fixed as such by the laws of Spain, of personalty owned during marriage by Spanish nationals always domiciled in Spain and neither of whom was ever in New York State.
Completely applicable here is the Spanish Civil Code which subjects to the statutory regime of community property all marriages of Spanish nationals in Spain, which applies to property outside as well as within Spain and which makes all property acquired by the married couple or either of them during marriage community property, and forbids the alteration of such community property either unilaterally or by mutual consent, to the extent even of voiding a gift from one party to another or renunciation by either spouse of any right or obligation in respect to the community property (Spanish Civ. Code, arts. 9, 1315, 1334, 1394, 1401). The only exception to all this arises when an antenuptial contract has been made. There is no proof or claim of any such contract here. The Spanish statutes are clear and no one disputes their meaning. The Duke and Duchess of Arion were Spanish nationals, were married in Spain and always had their domicile there as had their ancestors for generations or centuries. Neither was ever in New York. New York State’s only contact with this property was that for purposes of convenience or safety the husband and wife left valuable property in the custody of New York banks for safekeeping only. The banks were mere bailees without other title or interest. To say that setting up of joint accounts of personalty in New York subjected that personalty to New York law rather than to the law of the matrimonial domicile is to refuse to follow one of the most basic of Conflict of Laws rules (Story, Conflict of Laws [7th ed.], §§ 158-159; Leflar, Community Property and Conflict of Laws, 21 Calif. L. Rev. 221).
The oldest relevant case in this court (Bonati v. Welsch, 24 N. Y. 157, 162, supra) holds that the incidents of marriage, and contracts and property rights in relation to marriage are to be governed by the law of the matrimonial domicile. The directly controlling case in this court is Matter of Mesa y Her *178 nandez (172 App. Div. 467, affd. 219 N. Y. 566). In Mesa the New York courts, in a transfer tax proceeding, had to adjudicate the claim of the widow to a half ownership under the laws of Cuba, the matrimonial domicile (which has a community or property law like that of Spain), of personalty in custody of New York banks. A unanimous Appellate Division, affirmed without opinion by this court, held that “ the law of matrimonial domicile governed not only as to all the rights of the parties to their property in that place, but also as to all personal property everywhere, upon the principle that movables have no situs, or rather that they accompany the person everywhere, while as to immovable property the law rei sitae prevails ” (172 App. Div. p. 477). Respondent notes the Appellate Division’s statement in its Mesa opinion that “ Concededly there was no express contract between the parties ” and that, therefore, the law of the marital domicile governed. We think it clear that this reference was to the fact that, as in our case, the parties had not made an antenuptial agreement. The Mesa case has never been overruled, it expresses the accepted rule and should be applied here. The Restatement, Conflict of Laws, says in section 290: “Interests of one spouse in movables acquired by the other during the marriage are determined by the law of the domicil of the parties when the movables are acquired ” and in section 292: “ Movables held by spouses in community continue to be held in community when taken into a state which does not create community interests.” No one doubts that in Spain as in the eight American States which follow community law, any effort during marriage to change the nature or devolution of community property is void (Commissioner of Internal Revenue v. Chase Manhattan Bank, 259 F. 2d 231, 239, cert. den. 359 U. S. 913; Garrosi v. Gonzales, 8 P. R. Fed. 571; Kelly v. Kelly, 131 La. 1024; Smith v. Smith, 239 La. 688, 695).
Research has not turned up any other decision similar to the one now being made. For the proposition that New York law applies because joint accounts were created or attempted to be created in this State, the trial court and respondent put their whole reliance on Hutchison v. Ross (262 N. Y. 381, supra) and the conclusion there stated (p. 395) that “ The validity of a trust of personal property must be determined *179 by the law of this State, when the property is situated here and the parties intended that it should be administered here in accordance with the laws of this State.” The differences between our case and Hutchison are of substance and not detail. First, let it be noted that the transaction upheld in Hutchison v. Ross was a gift from a husband to his wife and children of a life interest carried out by making them the life beneficiaries of an inter vivos trust with a New York bank as trustee. The bank took title as such trustee. The marital domicile was in Quebec which has a civil law provision calling for community of property between spouses but allowing for ante-nuptial agreements. Boss and his prospective wife had made an antenuptial agreement providing that the property of each should be separate and that he would create a trust fund of $125,000 for his future wife and children. Several years after the marriage the husband, who had inherited a large estate from his father, concluded that the $125,000 trust provision was insufficient, agreed with his wife to revoke it and made a new trust with the same New York bank as trustee in which the principal amount was now $1,000,000. Years later the husband, having lost most of his inherited estate, secured the consent of his wife and children to a revocation of the second trust and brought the action (his trustee in bankruptcy later became the substitute of plaintiff) to set aside the trust as being void under the Quebec community property law which forbids the abrogation, modification or enlargement of an antenuptial agreement or a transfer during marriage by husband to wife óf any substantial property. A divided New York Court of Appeals, applying New York law, decided that the $1,000,000 trust was valid despite the Quebec statute. The Court of Appeals stated that the decisive consideration was as to the legality of the second trust—that is, whether we were 11 to apply the law of another jurisdiction to the conveyance of property situated here” (p. 399). Our court held that the attempted renunciation by the wife of her benefits under the original matrimonial settlement had to be determined by the laws of Quebec. On the other question, that is as to the validity of the second trust, the basic holding in our court was (262 N. Y., beginning at bottom of p. 396, supra): “ There is, nevertheless, no rule of law which would preclude the courts *180 of this State from determining in accordance with the rules of law of this jurisdiction, the validity of a conveyance of real or personal property contained in a bilateral agreement, even though the remainder of the agreement be governed by, and is void under, the law of another jurisdiction, provided the conveyance be separable from the other parts of the contract. Concededly that would be true if the conveyance were of real estate here. It is equally true of personal property situated within the jurisdiction of our courts. Here we are free to apply our law rather than the law of another jurisdiction ’ ’ (pp. 396-397). The Hutchison-Ross holding is in terms of trusts and conveyances, and can be read only as such (2 Beale, Conflict of Laws, pp. 1018-1019).
Thus we see that Hutchison v. Ross (supra) has only the most superficial resemblance to the situation now being examined. Among other differences, the Hutchison ease dealt with the validity of a conveyance whereas here there was the merest deposit of property for safekeeping in New York— that is, a bailment without change of title. As respondent in his answer in this cause admits, the New York banks acted in a “ solely * * # ministerial capacity as custodian and depositary”. Hutchison v. Ross involved a situation where not only title had passed to a trustee but application of the foreign law would have destroyed rights of third parties created and acquired in good faith and which merited protection. Not only did Hutchison v. Ross not overrule the Mesa decision (supra) but it stands apart and on its own facts.
If the intent of the parties to apply New York law is to control, there was undisputed proof in the Hutchison case (supra) of such intent, whereas in ours there is no real proof at all. The signing by the Duke and Duchess in Spain of routine j oint-account-for-custody agreements on forms supplied by the New York banks is not substantial proof that these people (who had no apparent reason for so doing) were attempting to abrogate as to these items of property the ancient community laws of their country. There is no other proof of such an intent to substitute New York law and a much more reasonable explanation of the documents exacted by the banks is that they operated and were intended merely to release the banks on payment to one spouse or the other. It is to be empha *181 sized that here, unlike the Hutchison case, no rights of third persons are involved or in need of protection. The court below mentioned the difficulties which New York banks would encounter if they had to comply with the laws of other jurisdictions. Such inconvenience there may be, but surely it does not justify repeal of the basic rules without any felt necessity for such abrogation and with no real proof that even the parties themselves ever intended such a result. Most extraordinary would be the results of a holding that any temporary deposit for emergency safekeeping of personal property in New York vaults puts the property under New York law for all purposes regardless of the ancient maxims, regardless of the law of the domicile and regardless of the intent of the parties.
We would reverse and grant judgment as demanded in the complaint, with costs in all courts.
Judges Dye, Fuld, and Burke concur with Judge Bergan; Chief Judge Desmond dissents in an opinion in which Judges Van Voorhis and Scileppi concur.
Order modified and, as so modified, affirmed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.