Richard S. Heller, J.
This claim seeks recovery of damages alleged to have resulted from the negligence of the State in constructing a bridge approach without providing adequate drainage. The original claim filed on November 4, 1959 alleged damage to the foundation wall of claimant’s home on August 28, 1959. Thereafter claimant was permitted to file a supplemental claim alleging further damage from the same cause on June 5 and June 17, 1960.
The property damaged is located in the City of Binghamton and is known as 22 New Street. New Street runs in a generally north-south direction and prior to the construction by the State in 1955 and 1956, ran between Vestal Avenue on the south and Conklin Avenue on the north. The slope of New Street was generally downward from south to north toward the river, north of Conklin Avenue. In 1955 and 1956 the State built a new bridge as part of Route 17 in the City of Binghamton and the *1079 southerly approach to that bridge cut New Street off from Conklin Avenue north of 22 New Street. Since that time New Street has been a dead-end street running from Vestal Avenue to this bridge approach.
Prior to the construction of the bridge approach, surface water generally flowed north along New Street from Vestal Avenue and was picked up by inlets to the storm sewer system along the curbs of New Street or flowed into Conklin Avenue. Inlets were located in the street at about 22 New Street and additional inlets were located at the intersection of New Street and Vestal Avenue. Two additional inlets on New Street north of 22 New Street were eliminated by the bridge approach.
The construction did not provide any additional drainage along New Street. The State, by adding bituminous asphalt surface to New Street extending southerly from the bridge approach to the inlets at about 22 New Street, made a slight change in the grade along each curb line so that water would flow away from the bridge approach to the inlets.
After the bridge approach was constructed, it was observed that from time to time rain water ran down New Street and accumulated adjacent to the bridge approach and as the water increased it covered a greater and greater area to the south of the bridge approach and toward 22 New Street.
The cellar of 22 New Street had dry stone walls and prior to the construction had been a dry cellar. After the construction the cellar was damp and occasionally had water in it.
On August 28, 1959 during a period of heavy rain, this accumulation of water washed out a portion of the east and north wall of the foundation of 22 New Street leaving a corner of the house unsupported and deposited a considerable quantity of mud, silt and debris in the cellar. The cellar was cleaned out and a portion of the wall that had been washed out was replaced with a concrete foundation at a total cost of $1,225. Thereafter and in October or November, 1959, the City of Binghamton installed larger inlets and increased the size of the laterals leading from those inlets to the storm-sewer main.
Thereafter and on June 5 and 17 of June, 1960 water again accumulated on New Street and flowed into the cellar at 22 New Street. It did further damage to the portion of the foundation which had not been replaced and it also washed out a part of the cellar floor which was dirt and weakened the support of the stairway leading from the cellar to the first floor. The damage sustained had not been repaired but the estimated cost of repair was $462.
*1080 The claimant presented proof that complete reconstruction of the cellar wall to provide a dry cellar would cost approximately $3,400. Claimant produced a real estate appraiser as an expert witness who testified that in his opinion the fair market value of the property had been damaged to the extent of $3,300 by reason of the damage suffered on August 28, 1959 assuming that it was restored to the dry-cellar condition existing prior to the construction.
At the time of the damage involved in the original claim on August 28, 1959, the title to the premises known as 22 New Street was held in a tenancy in common, with Jesse H. Holmes and Mildred G-. Holmes, his wife, owning an undivided one-half interest as tenants by the entirety and Stuart Holmes and Jeanne C. Holmes, his wife, holding an undivided one-half interest as tenants by the entirety. On April 20, 1960 Jesse H. Holmes and Mildred G-. Holmes conveyed the undivided one-half interest which they held as tenants by the entirety to Stuart M. Holmes and Jeanne . C. Holmes as tenants by the entirety with a life estate reserved by Jesse H. Holmes and Mildred Gr. Holmes. On the same date Jesse H. Holmes and Mildred Gr. Holmes executed an assignment which purported to transfer a claim against the State to the claimant Stuart M. Holmes. When this evidence was introduced, the claimant moved to amend the claim to add the names of Jesse H. Holmes, Mildred Gr. Holmes and Jeanne C. Holmes as claimants. The State objected to the amendment and decision was reserved on the motion.
This motion by the claimant must be denied. If the persons sought to be added had a claim, it was a condition precedent to the bringing of the action that either the claim or a notice of intention to file a claim had to be filed within 90 days after the accrual of the claim. (Court of Claims Act, § 10.) Where one tenant in common or one tenant by the entirety has filed a claim and the other tenants in common or tenant by the entirety have not joined in that claim and their time to file has expired, such tenants in common or tenant by the entirety cannot then be joined as a claimant. (Slocum v. State of New York, 177 Misc. 114; MacFarland v. State of New York, 177 Misc. 117; Nightingale v. State of New York, 46 N. Y. S. 2d 525.)
The State produced only one witness who was an employee of the engineering firm which designed Boute 17 at this particular location and who actually worked on that design. His testimony was simply that the designer had knowledge of the drainage facilities and the water conditions at the time of the design and the design was in accordance with good engineering practice.
*1081 The fact that the design was in accordance with good engineering practice is not sufficient to remove liability of the State if the acts of the State were in derogation of the rights of the claimant. (Kerhonkson Lodge v. State of New York, 4 A D 2d 575.)
Generally a lower property owner has a right to improve his property regardless of what may happen to the surface water provided that the improvements are made in good faith and that the water is not collected and drained onto other property. (Kossoff v. Rathgeb-Walsh, Inc., 3 N Y 2d 583.) We find that here the State went beyond what it might do as a lower property owner without incurring liability from the effect of the surface water. The Deputy Engineer of the City of Binghamton described the handling of the surface water as follows: “ Well no, the design of the sewers and gutters and the inlets for a city street, when you get a heavy rain on a down hill street, one pair of basins often will not take care of it. It runs down to gutters, to catch basins, they pick up what they can and then it goes to the next pair, and then you pick up what you can and where you can. ’ ’
Under these circumstances the combination of building a dam in the form of a bridge approach across New Street and eliminating two inlets, with no substitution for the drainage effect represented by those inlets, amounted to an artificial gathering of surface water and throwing it upon the property in which the claimant had an interest, in derogation of his rights.
The claimant has introduced three different measures of damage. He has presented evidence as to the diminution in market value, assuming action by the claimant sufficient to prevent any further damage in the event of a continuation of the wrongdoing by the State. He has also presented evidence of the actual cost of installing a different kind of foundation which would be sufficient to protect against the results of further wrongdoing. He has also presented evidence of the cost of repairing the actual damage suffered.
The measure of damages to be applied cannot be based upon the theory of a permanent taking. The permanence of a continuing trespass is not determined by the action of the person wronged in correcting or protecting against the condition. (Dietzel v. City of New York, 218 N. Y. 270.) Damages must be assessed on the assumption that the wrongdoer will right the wrong and claimant is limited to the injury which he had sustained up to the time of filing his claim. (Zidel v. State of New York, 198 Misc. 91.)
Under the circumstances here the total injury to the property is properly measured by the cost of repairing that injury which *1082 cost is, on the evidence, less than any diminution in value. These damages amount to $1,225, which was the cost of repairing the damage suffered on August 28,1959, and $462 which Avas the cost of repairing the damage suffered on June 5 and June 17, 1960.
The court finds that this claimant is entitled to recover the total amount of both items of damage, a total of $1,687. While the claimant did not have the total ownership at the time of the injury, he did own a possessory interest in the property and was in possession. Under these circumstances we find that the claimant is entitled to recover the entire amount of $1,687.
The damage here was temporary in nature and this claimant had a right to possession equal to that of any other person. The Avrongdoer faced no other claims for the same damage, since all other persons having a right of possession and interest at least equal to that of the claimant were and are barred from seeking recovery from the wrongdoer. Under such circumstances the wrongdoer may not escape liability for the total damage incurred on the ground all owners of joint and several interests have not joined in the claim. (Rogers v. Atlantic, Gulf & Pacific Co., 213 N. Y. 246; Baumann v. City of New York, 227 N. Y. 25.)
The other persons holding an interest in this property may have a right to require the use of the funds recovered for the damage on June 5 and June 17,1960 for repairs to the premises, but this court need not concern itself with that situation so long as the wrongdoer cannot be subject to another claim for the same amount. On the first item of repair in the amount of $1,225 the evidence is clear that this claimant actually paid the total cost of the repair. Claimant is entitled to judgment in the amount of $1,687.