Richard S. Heller, J.
The claimant herein is a domestic corporation engaged in the sale, both wholesale and retail, of electrical fixtures and appliances and various other items in the City of Oneonta, New York.
On April 4, 1960, the waters of the Susquehanna River overflowed its banks, damaging a considerable amount of property within the City of Oneonta, including the premises occupied by the claimant and certain of the inventory, stock in trade and trade fixtures contained therein.
When the claim first came on for trial, it was stipulated that the liability issue be severed from that of damages and tried *883 first. Upon the proof presented, the court, by decision dated July 15, 1984, resolved this issue in claimant’s favor. This decision, therefore, deals solely with the quantum of damages to which the claimant is entitled.
In the routine presentation of proof of ownership, it immediately appeared that, contrary to statements and allegations in the notices of intention and claim, the claimant was a tenant or lessee and that title to the real property was held by Mildred Drogen, claimant’s president and treasurer and sole shareholder. As soon as this variance from the pleadings became apparent, counsel for the State requested a determination that would restrict the proof presented to damage to claimant’s inventory of merchandise or stock in trade. The court reserved decision on this issue and permitted proof of damage to the real property over the State’s continuing objection and subject to a later motion to strike.
The proof established that Mildred Drogen, claimant’s president-treasurer and sole shareholder, and Paul Drogen, claimant’s vice-president and Mildred Drogen’s husband, had been engaged in a business, identical to that of claimant, in Oneonta, since 1949. Although it was not clear whether they operated as a partnership or under some other arrangement, both husband and wife devoted full time to the business before and after the formation of claimant which took over operation of the business on January 1, 1960.
In connection with the incorporation and general reorganization of the business, title to the real property was conveyed to Mrs. Drogen alone, who, in turn, leased it to the corporation. The lease, which was dated January 6, 1960, retroactive to January 1, 1960, was a standard short-form agreement letting the premises to claimant for a term ending December 31, 1965, and obligated claimant to pay rent, taxes, insurance, water rents, “ and to otherwise keep and maintain the same in a good state of repair and maintenance.”
Although there was no dispute with respect to the lease itself, a considerable amount of dispute was engendered by an agreement stapled to the lease when it was offered in evidence. This agreement, entitled “ addendum,” recited that it had been executed on February 10,1960, and purported to amend and supplement the lease in several ways. The most important provisions, from the standpoint of the issues here involved, purported to bestow upon claimant corporation all of the rights and duties of the owner of the fee, including specifically ‘ ‘ the right to bring any and all actions * * i:; for any damage done to the subject structure and property and in such instance shall be deemed *884 to be not only possessed of the subject property but shall be deemed for the purpose of any action or suit as the owner of the fee and shall have all the rights, privileges and emoluments in any suit, litigation or otherwise, of the owner of the fee in the subject premises.”
Although there was no reason to doubt that the addendum had in fact been executed by Mr. and Mrs. Drogen, a mere examination of its contents, in the light of issues actually or apparently involved in this claim, would cause anyone to doubt that it had been executed on the date specified. Viewed as crucial to a portion of this claim, as it was by counsel for both parties, it is as self-serving as any instrument which the court has had occasion to encounter. It not only expressly gives claimant the right, as lessee, to assert rights commonly regarded as belonging to a lessor-owner, but also appears to give the claimant the right to allege ownership as it did in the pleadings.
It is true that any agreement between an individual and a corporation, in which he or she holds all of the stock, will almost inevitably be self-serving in many, if not all, respects. It is equally true, however, that deeds and agreements can bear any date and that in situations where the parties are not adversaries from a legal standpoint or dealing at arm’s length, courts are required to make a careful scrutiny of the evidence, both direct and circumstantial. (Vinciguerra v. State of New York, 22 A D 2d 93.)
An examination of the agreement itself led the court to suspect that it should not be regarded as anything but an attempt to make a nunc pro tunc adjustment of legal relationships to conform to the pleadings and to avoid the possible effect of a Statute of Limitations. The likelihood that it would have been recommended by counsel or executed so soon after the preparation and execution of the basic lease appeared to be remote, if existent at all.
The court’s suspicions were strengthened by the testimony of a prominent Oneonta attorney subpoenaed by the State. This gentleman had given legal counsel to the Drogens in matters pertaining to their business, both before and after the formation of claimant corporation, and had in fact handled the legal aspects of incorporation and the establishment of the lessor-lessee relationship embodied in the basic lease.
Although he did not represent the claimant herein, the Drogens continued after the flood to rely upon this attorney for advice pertaining to their business, and specifically consulted him with respect to the application for a disaster loan from the United States Small Business Administration. In connection *885 with this application, which was submitted in 1961, the attorney was required, among other things, to gather together and forward to counsel for the Small Business Administration information concerning the exact status of title and any lease then existing. One of the documents so forwarded by him was the original lease together with an affidavit by Mrs. Drogen confirming that the lease was still in full force and effect. Although the attorney prepared the necessary affidavit, attached it to the lease and submitted it on claimant’s behalf, he denied that he had ever seen the addendum before he was questioned concerning the same at the trial.
The fact that no evidence was presented directly impeaching the date specified in the agreement means little in view of the obvious fact that such evidence would have been difficult, if not impossible, to obtain. ‘1 If everything or anything had to be believed in court simply because there is no witness to contradict it, the administration of justice would be a pitiable affair ’ ’ (Punsky v. City of New York, 129 App. Div. 558, 559).
The cumulative effect of the agreement itself, the specific testimony referred to above, and other circumstances such as the alleged inability of claimant’s officers to recall upon whose advice and when the addendum was prepared and executed, have led the court to disregard it completely in determining issue of damages herein. Irrespective of this determination, however, the court does not believe that the defendant’s position with respect to damages to the real property is well founded.
It is true that a lessor and lessee are ordinarily regarded as having a separate and distinct interest in demised premises and that damage to the interest of either is separately recoverable. This division of interest might, for instance, prevent a recovery for the lessor’s interest in an action by the lessee alone in an appropriation case. Thus, in a somewhat analogous situation, it has been held that a tenant by the entirety suing alone may not recover the entire value of the property taken but is limited to the value of his or her interest in the same. (MacFarland v. State of New York, 177 Misc. 117.)
The New York courts, however, have applied a different rule or concept to cases involving tortious damage to real property. Thus, a tenant in possession has been permitted to recover against a third party, not only for injuries to the tenant’s possessory interest, but also for injuries which, from a technical standpoint, would be regarded as having been suffered by the lessor or owner of the fee. (Rogers v. Atlantic, Gulf & Pacific Co., 213 N. Y. 246.) Early cases justified this rule on the grounds that at common law a lessee or tenant for years was *886 liable to the lessor landlord for waste, even though the injuries or damage constituting waste were caused by the independent action of a third party. (See, e.g., Austin v. Hudson Riv. R. R. Co., 25 N. Y. 334; Dix v. Jaquay, 94 App. Div. 554, 556; Cook v. Champlain Transp. Co., 1 Den. 91, 94.)
Although the lessee’s or tenant’s obligation to the lessor or landlord was subsequently tempered, the courts continued to hold that a party causing damage to property should not and could not escape liability for the entire damage done by raising or asserting the rights of a third party under whom he did not claim and whose independent remedy was barred by a Statute of Limitations. (Rogers v. Atlantic, Gulf & Pacific Co., supra; Holmes v. State of New York, 32 Misc 2d 1077, 1082.)
The court can see no reason why this rule should not be applied in the present situation. The State’s responsibility for any injuries or damages in fact suffered has been established, notice was given that recovery was sought for damages to the real property, and there is no danger of a double recovery.
It is clear that the claimant suffered some, if not a considerable amount of, damage in the flood. In attempting to evaluate the injuries suffered, however, the court has been faced with the extremely difficult problem of dispensing justice to a corporation whose officers and sole shareholder obviously knew more about what the flood had cost claimant, in money terms, than they were willing to disclose.
With respect to the extent of damage to or destruction of its inventory of merchandise, the claimant submitted two separate lists; one purporting to present an account of merchandise completely destroyed (Claimant’s Exhibit 11), and the other purporting to do the same with respect to merchandise partially destroyed or damaged (Claimant’s Exhibit 12).
Mrs. Drogen specifically stated in her testimony that they were not based upon a physical inventory and emphasized that an item by item inventory would have been extremely difficult, if not impossible, to take. Although parties are often forced to rely upon estimates, the validity of those used in the present case was rendered highly questionable by other testimony and exhibits as the trial progressed.
The first serious problem became obvious when it appeared that in claimant’s New York State franchise tax return for the fiscal year ending on March 31, 1960, only four days prior to the flood, claimant’s closing inventory was stated to have amounted to $20,962.26. This figure, the accuracy of which was confirmed by Mrs. Drogen, exceeded the total amounts specified in Exhibits 11 and 12 by only $46. Since it was *887 conceded that only a portion of claimant’s total inventory of merchandise was damaged or destroyed, it appeared to be obvious, or at least likely, that someone had estimated wrong somewhere.
When the problem became apparent, testimony was elicited from Mrs. Drogen that the figure used in the franchise tax return was based upon the lower of cost or market, while the extensions in Exhibits 11 and 12 were based solely upon cost. Even though this threw some light upon the problems raised by the figures themselves, claimant’s witnesses claimed to be unable to provide any estimate whatsoever of the market value of the items allegedly destroyed or damaged, or of the per cent or value of merchandise which was untouched by the flood. Claimant’s protestations of ignorance did not help the court at all.
It was also obvious that at the time of the trial claimant could have presented a truer picture with respect to the saleable value of items damaged, but not destroyed, in the flood. Its method of reducing the alleged cost by an arbitrary 50% might have been a legitimate means of arriving at a figure to be used in its notice of intention or even notice of claim. At the time of trial, however, a more accurate appraisal of the injuries actually suffered could have easily been made and presented by the Drogens. Since this was not done the natural and legitimate conclusion is that the estimate relied upon painted a dimmer picture of the flood damage than was actually the case.
This conclusion is strongly supported by the report of the auditor retained by the State. What records claimant’s officers and attorney made available to the auditor indicate not only that the itemization contained in Exhibits 11 and 12 was far from accurate, but also that the arbitrary reduction of 50% on Exhibit 12 was completely out of line with the amounts received by claimant upon its post-flood sale of damaged merchandise. The records further indicated that the flood had little or no effect upon claimant’s gross profit, which would ordinarily be expected upon the destruction of or damage to inventory as extensive as that alleged by claimant.
The same conclusion has been reached with respect to alleged damage to real property. At the trial claimant submitted bills, invoices and receipts establishing an out-of-pocket expenditure of $5,650.93. Although the court is satisfied that further expenses were actually incurred and provable, claimant chose to give only a vague estimate of the same. With respect to repairs which had not been made at the time of the trial, claimant’s officers testified that estimates had been procured from *888 local contractors. This testimony convinced the court that the actual expense of making all repairs had been estimated with some degree of certainty upon the basis of advice and estimates obtained from persons or contractors familiar with local material and labor costs. Bather than give a complete picture of actual expense already incurred and specific estimates, the claimant chose to rely upon an expert whose familiarity with local costs was questionable. With respect to work that had already been done, this procedure is unsatisfactory.
The court’s dissatisfaction with the proof, however, does not relieve it of the obligation to arrive at a figure or figures reasonably justified by the proof.
With respect to merchandise completely destroyed, the court has assumed that the cost of the merchandise was approximately $8,600; that claimant’s total inventory of merchandise valued on a similar basis was approximately $37,000; that therefore the goods completely destroyed amounted to approximately 23.5% of claimant’s total inventory; that the value of the total inventory was approximately $21,000; that therefore the value of the merchandise destroyed and the amount recoverable herein was 23.5% of $21,000 or $4,935.
With respect to merchandise damaged or “ partially destroyed ”, claimant’s proof was obviously inaccurate and arbitrary. It was inconceivable that a more accurate picture could not have been presented and in the absence of any legitimate reason for so doing the court is compelled to grant only nominal damages. It is therefore determined that for all damage to or destruction of its inventory the claimant is entitled to recover the sum of $5,000.
With respect to damages to the real property, the court believes that the sum of $11,500, as alleged in the notice of claim as filed, will reasonably compensate claimant for such damage. This amount includes, in addition to the expenses specifically proved in the amount of $5,650.93, allowances for cleaning up the premises, replacing the heating system, completing repaving work and repairing foundation walls and for all other elements of damage to the real property.
It is therefore the determination of the court that the claimant, Drogen Wholesale Electric Supply, Inc., is entitled to recover the sum of $16,500, with interest, from April 4, 1960 to October 4,1960 and from April 3, 1962 to entry of judgment.